UNITED STATES of America,
Plaintiff-Appellant,

v.

THREE HUNDRED SIXTY FOUR THOUSAND NINE HUNDRED SIXTY DOLLARS ($364,960.00) IN UNITED STATES CURRENCY, Defendant-Appellee.

No. 80–5207.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 13, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Robert I. Targ, Sp. Asst. U. S. Atty., Miami, Fla., for plaintiff-appellant.

Becham, McAililey & Proenca, James R. Hubbard, Miami, Fla., for defendant-appellee.

Before RONEY, KRAVITCH and ANDERSON, Circuit Judges.

KRAVITCH, Circuit Judge:

In 1978, Congress amended 21 U.S.C. § 881 to provide for the forfeiture of monies traceable to, intended for use, or used in the unlawful exchange of a controlled substance. Pub.L.No. 95–633, § 301(a), 92 Stat. 3777 (1978). At issue here are the requirements for standing to contest a forfeiture pursuant to this provision and the extent of proof necessary to establish probable cause of a substantial nexus between seized monies and illegal narcotics transactions. The government argues that the district court erred in (1) allowing standing to claimant, as assignee of the currency, without requiring proof of the validity of the assignors' interest; and (2) granting claimant's motion for summary judgment on the ground that the facts shown failed to establish probable cause. We agree with the government on both counts. We therefore reverse and remand so that the trial court may hold proceedings and make findings not inconsistent with this opinion.

## I. Facts

Early on the morning of November 23, 1978, officers of the Dade County Department of Public Safety discovered an abandoned automobile that appeared to have veered off the road and struck a utility pole. Within the car were blood spatters indicating that there had been at least two occupants. An address from a utility bill found in the vehicle led the police to a nearby apartment, where they found Norberto Murillo and Javier Arbelaez, both injured.[1] They also found Abraham Nachman asleep in a bedroom. The officers ascertained the identities of the three men: Murillo and Arbelaez were Colombian aliens, and Nachman claimed dual American-Israeli citizenship. The officers sent Murillo and Arbelaez to a nearby hospital where, after receiving medical treatment, the two attempted to escape through a rear-exit hospital door. Subsequently they were apprehended by Safety Department officers and transported back to the apartment.

Meanwhile, the officers at the apartment had questioned Nachman and observed in his purse two glassine packets containing what later was determined to be cocaine. They placed Nachman under arrest. They also discovered a female illegal alien hiding in a bathtub and further observed a loaded .32 caliber Titan pistol with an attached silencer in the bed in which Nachman had been sleeping[2] and a small envelope containing what appeared to be hashish on the dresser in the same room. In an open box in a living room closet, they observed a pharmacist's scale and five empty plastic baggies containing traces of a white powdery substance that appeared to be cocaine residue. The officers arrested Murillo and Arbelaez and, on the basis of the above facts, obtained a search warrant for the apartment. The products of that search were three suitcases containing currency totalling $364,960.00.[3]

All three men advised the arresting officers that they were recent guests in the apartment. It later was determined that the apartment had been leased to one Jaime Valez, who was not present at the time of the incidents leading to the arrests and

---

1. The government states that Murillo invited the officers into the apartment; claimant makes no statement regarding their entry. Since the legality of the entry and the officers' discovery of the item seized is not at issue, the nature of their entry is irrelevant here.

2. A second handgun was found in the living room. The record does not reflect whether the latter gun was observed prior to or during the formal search.

3. One suitcase contained approximately $20,000, another approximately $110,000, and the third approximately $230,000. All three suitcases were found in the bedroom where Nachman had been sleeping.

seizure. The parties disagree on the facts surrounding the discovery of the suitcases, and the district court made no express findings on these facts. The government claims that all three of the men denied knowledge or ownership of the money found in the suitcases at the time of their arrest and that Nachman stated that an unidentified person had given him $500 on the previous evening to transport one of the suitcases from Los Angeles to Dade County. Brief for Appellant at 6. Although claimant admits that the men initially disclaimed ownership,[4] it states that Nachman later claimed he owned one of the suitcases,[5] and that physical evidence established Murillo's and Arbelaez' ownership of the other two suitcases.[6]

The Customs Service seized the money on November 28, 1978 pursuant to 21 U.S.C. § 881(a)(6).[7] The State of Florida charged Murillo and Arbelaez with possession of cocaine and narcotics paraphernalia and Nachman with possession of cocaine, hashish, and the two weapons.[8] At a preliminary hearing the State dismissed the charges against Murillo and Arbelaez, and subsequently dropped the charges against Nachman.

On November 30, 1978, Arbelaez, Murillo, and Nachman assigned all of their interest in the seized currency to their attorneys, Moran and Gold, P. A., claimant here. On February 21, 1979, the United States filed a formal complaint for forfeiture, alleging that the currency had been exchanged or intended to be exchanged for a controlled substance. Moran and Gold interposed its claim to the currency, alleging the assignment by Murillo, Arbelaez, and Nachman.

## II. Probable Cause

The district court concluded that the government had failed to satisfy its burden of showing probable cause[9] in a forfeiture proceeding under 21 U.S.C. § 881(a)(6).[10] Section 881(a)(6) provides:

4. Brief for Claimant-Appellee, at 5.

5. The record contains sparse evidence on this issue. Neither Nachman, Murillo, and Arbelaez, nor the arresting officers were present at the district court hearing to testify about the conversation concerning ownership of the suitcases. Moreover, the depositions of the arresting officers, for some unexplained reason, have been omitted from the record. Excerpts from the depositions contained in the parties' pleadings show conflicting testimony by the officers. The only evidence of statements made by Murillo and Arbelaez is the testimony of one officer that they did not speak English. As to Nachman, one officer stated that during questioning of the men in the apartment, prior to seizure of the suitcases, "at one time he stated none of them were his suitcases. Then later he said one of them he had brought into the house, but he did not have a key to it." Another officer stated that he believed Nachman had indicated that one of the suitcases was his. Finally, a third officer stated that Nachman claimed ownership of all three suitcases and refused the officers permission to examine their contents:

Q: Did you ever hear any of the police officers there discussing with the two Columbians any of the suitcases in the apartment?
A: With the two Columbians you wouldn't have understood because Diaz was talking in Spanish to the Columbians at all times because of their lack of English and he did talk to what's his name—he did talk to

Nachman about it and Nachman kept on saying, "These are my suitcases."
They asked him why they were locked, and he said, because they are mine.
They asked, "Do you mind if we look at them?"
He said, "No way."
Q: He indicated they were his and nobody was going to get permission from him to enter them?
A: Right.

6. Arbelaez' passport was found in one suitcase, and the initials "N.M.," corresponding to those of Murillo, were on another.

7. *Infra.*

8. See note 3 *supra.*

9. Its opinion states: "This Court ... is compelled to agree with Claimant's assertion that the government's allegation amounts to no more than mere speculation and conjecture."

10. Neither party argues that the government's initial burden is other than probable cause. 19 U.S.C. § 1615 provides that in all forfeiture actions the burden of proof shifts to the claimant only after the government shows probable cause. Congress intended no departure from this standard in § 881(a)(6). Section 881(d) makes the probable cause standard applicable to forfeiture suits under § 881(a)(6):

All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter [shall be subject to forfeiture to the United States], except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Additionally, the legislative history of this provision contains the following passage:

Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent.[11]

Relying on this statement, the district court wrote:

The facts herein simply do not satisfy the above-stated "substantial connection" requirement. To order a forfeiture based on wholly circumstantial evidence and mere inference would conflict with established principles of due process. In short, this Court is unable to conclude, based on the undisputed facts contained in the record, that probable cause exists of the seized currency's connection to illegal activity.

Order granting Motion for Summary Judgment, at 3.

The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof; ...

Our disagreement with the district court lies not with its reading of the legislative history and its finding of a "substantial connection" requirement but rather with the meaning of probable cause in these circumstances. First, we note that this question is one of law. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). *See also United States v. One Twin Engine Beech Airplane*, 533 F.2d 1106, 1109 (9th Cir. 1976).[12] Additionally, we must view the facts in the light most favorable to the government, the party opposing summary judgment. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

We accept the formulation of the government's burden suggested by claimant: under § 881(a)(6), the government must show "probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute;" *i. e.*, the exchange of a controlled substance. We note, however, that the definition of probable cause applicable here is the same as that which applies elsewhere: "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir. 1980). Our review of the facts in this case leads us to conclude that the officers had a reasonable ground for belief, or more than mere suspicion, that there was a substantial connection between the $364,960.00 seized and illegal narcotics trafficking.

Two illegal aliens from Colombia, a country where large amounts of the nar-

---

**11.** Joint Explanatory Statement of Titles II and III, *reprinted in* [1978] U.S.Code Cong. & Ad. News 9518, 9522.

**12.** Prior decisions of this circuit in cases reviewing challenges to forfeitures show that we have considered the question of probable cause one of law rather than fact. *See, e. g., United States v. One 1975 Ford F100 Pickup Truck*, 558 F.2d 755 (5th Cir. 1977); *United States v. One (1) 1971 Chevrolet Corvette Automobile*, 496 F.2d 210 (5th Cir. 1974); *Bush v. United States*, 389 F.2d 485 (5th Cir. 1968).

cotics that enter the United States originate, were apprehended in an apartment in which they claimed no interest, with narcotics, narcotics paraphernalia, guns, and the $364,960.00. From the sheer quantity of currency seized under these circumstances, a court may permissibly infer a connection with illegal narcotics trafficking. In *United States v. Magnano*, 543 F.2d 431, 437 (2d Cir. 1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977), the Second Circuit held that possession of a large amount of cash by a defendant charged with participation in a narcotics trafficking conspiracy was relevant admissible evidence of such participation:

> [T]he possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means. [Quoting *United States v. Tramunti*, 513 F.2d 1087, 1105 (2d Cir. 1975), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673.]

*See also United States v. Schwartz*, 535 F.2d 160, 165 (2d Cir. 1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581 (1977) (evidence of unusual accumulation of cash and assets in defendant's safe deposit box properly admitted in prosecution for conspiracy to traffic in narcotics). Here, the Dade County officers also found small quantities of cocaine and hashish, two weapons, a scale, and five glassine bags containing cocaine residue. From the latter, we may infer that a larger quantity of drugs than that found was to be sold. Murillo's and Arbelaez' escape through the rear exit of the hospital to which they were taken for treatment, along with denials by all three men, at least initially, of ownership of the three suitcases, also constitute circumstantial evidence of guilt. In *United States v. Myers*, 550 F.2d 1036, 1048–50 (5th Cir. 1977), *appeal after remand*, 572 F.2d 506 (1978), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149, we held that the facts of an accused's flight, escape from custody, resistance to arrest, concealment, and related conduct may be admissible as evidence of consciousness of guilt and thus of guilt itself.[13] Murillo and Arbelaez, of course, may have attempted to escape because of their status as illegal aliens. Evidence sufficient to shift the burden to claimants in a forfeiture proceeding need not provide conclusive proof, however, but rather a reasonable ground for belief. *United States v. One 1978 Chevrolet Impala, supra.* That the evidence presented would support an alternative hypothesis does not prevent it being probative on the issue of probable cause. We note also that our holding does not result automatically in forfeiture; it merely shifts the burden to claimants to rebut the government's theory.

The district court concluded that these facts constituted circumstantial evidence and were thus insufficient to support probable cause. "To order a forfeiture based on wholly circumstantial evidence and mere inference would conflict with established principles of due process." Such conclusion was erroneous. Were it correct, a highly anomalous situation would result: circumstantial evidence would be insufficient to support forfeiture, a civil proceeding, but sufficient in and of itself in certain cases to support a criminal conviction. *See United States v. Allison*, 616 F.2d 779, 784 (5th Cir. 1980), *cert. denied*, 449 U.S. 857, 101 S.Ct. 156, 66 L.Ed.2d 72.[14] In our judg-

---

**13.** We disallowed an instruction that the jury could infer consciousness of guilt from the alleged flight in that case because the allegations of flight were without support in the record. *United States v. Myers*, 550 F.2d at 1050.

**14.** See also *United States v. Fox*, 613 F.2d 99, 101 (5th Cir. 1980) and *United States v. Cowart*, 595 F.2d 1023, 1034–35 n.16 (5th Cir. 1979) (following *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954)), which hold that the test for sufficiency of evidence in criminal cases is the same whether conviction is based on circumstantial or direct evidence: whether a trier of fact reasonably could infer that the defendant was guilty beyond a reasonable doubt. Although it has been suggested that earlier decisions by this Circuit require a more stringent sufficiency standard in cases where the government's evidence is wholly circumstantial, *see, e. g., United States v. Marable*, 574 F.2d 224, 229 (5th Cir. 1977),

ment, the evidence, while circumstantial, was sufficient to satisfy the government's initial burden of showing probable cause.

Finally, we consider *United States v. Wright*, 610 F.2d 930 (D.C.Cir.1979), on which the court below relied. In *Wright*, appellants lived with several others in a "[narcotics] shooting gallery." [15] Showing probable cause that the residence contained heroin and narcotics paraphernalia, police obtained a search warrant. Pursuant to the warrant, officers seized narcotics, narcotics paraphernalia, and $2100 from appellants Wright and Boyd. They arrested appellants along with five other persons present in the building. All indictments against appellants were subsequently dismissed. Wright and Boyd then moved for the return of the $2100. The district court denied the motion, concluding that there was no evidence of ownership and that the money represented the proceeds of illegal narcotics sales.

The Court of Appeals for the D. C. Circuit rejected both assertions, and held that Wright and Boyd had a reasonable presumption of entitlement to the money. It held that simply because appellants lived in a "shooting gallery" and narcotics paraphernalia was found in the same bedroom as the currency, the court below could not reasonably conclude that the money was the fruit of narcotics sales. *Id.* at 941.

Although the conclusion of the *Wright* court is reasonable, it is not dispositive of the instant case.[16] The sheer quantity of money seized here distinguishes it from *Wright*. *United States v. Magnano, supra*. Moreover, the money involved in *Wright* had been seized from the robe of Wright

while she was in the bathroom and from the bedroom dresser of Boyd in a house that both women said they lived in and used. *Id.* at 933. Although drug paraphernalia and weapons were also found on the premises where the *Wright* appellants were arrested, a hypothesis that the money was legally possessed by them and was not connected with any narcotics transactions was at least as plausible as the contrary theory. *See id.* at 941–42. The same simply cannot be said of a quantity of money totalling hundreds of thousands of dollars packed into three suitcases and found in an apartment that none of the parties involved either lived in or even stayed in for any appreciable length of time. These facts, together with the evasive behavior exhibited regarding the men's ownership of the suitcases and the attempt by two of them to escape from the police, result in our conclusion that there is probable cause for the belief that a substantial connection existed between the seized currency and narcotics trafficking. The burden of proof thus shifts to the claimants to rebut the government's evidence and show that the money seized was not used to facilitate a narcotics transaction. *Bush v. United States*, 389 F.2d 485, 489 (5th Cir. 1968). Before remanding for a trial at which appellee will be afforded an opportunity to present such rebuttal evidence, however, it is necessary to consider whether claimant has demonstrated an interest in the currency sufficient to establish its standing to challenge the forfeiture.

### III. Standing

The government argues that claimant should have been required to demonstrate

---

the test enunciated in those cases—whether reasonable jurors could find the evidence inconsistent with every hypothesis of innocence—is simply a different way of stating the generally applicable standard. *Holland v. United States, supra*, at 139–40, 75 S.Ct. at 137–138. "In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Id.*

**15.** The phrase "shooting gallery," taken from *United States v. Johnson*, 475 F.2d 977, 981 (D.C.Cir.1973) (Bazelon, C. J., dissenting), re-

fers to "a place used exclusively for the injection of narcotics."

**16.** We note, too, that *Wright* was before the court in a very different posture. Appellants had moved for the return of their money, seized pursuant to a warrant; the government had not instituted forfeiture proceedings. Thus the courts there were addressing the ultimate question of return of the seized goods rather than the preliminary question of probable cause at issue here.

the validity of its interest in the defendant currency as a prerequisite to its standing to challenge the forfeiture. Claimant contends that the trial court, though it made no express ruling on this issue, addressed the question of claimant's standing and properly ruled in claimant's favor. Our review of the record, including the portion of the district court hearing set out in the margin below,[17] convinces us otherwise. As noted above, the facts are in dispute and the district court made no findings concerning the facts relevant to claimant's interest in the currency. Hence, we instruct the district court on remand to conduct a full evidentiary hearing and assess claimant's standing in this action in accordance with the following principles and guidelines before proceeding to trial on the merits.

■ Courts in this and other circuits have recognized that a party seeking to challenge the government's forfeiture of money or property used in violation of federal law [18] must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture. *See United States v. Currency Totalling $48,318.08,* 609 F.2d 210 (5th Cir. 1980); *United States v. One 1967 Chris-Craft 27 Foot Fiberglass Boat,* 423 F.2d 1293, 1294 (5th Cir. 1970); *United States v. One 1945 Douglas C–54 (DC–4) Aircraft,*

604 F.2d 27, 28 (8th Cir. 1979); *United States v. Fifteen Thousand Five Hundred Dollars ($15,500.00) United States Currency,* 558 F.2d 1359 (9th Cir. 1977); *United States v. Eleven Thousand Five Hundred and Eighty Dollars ($11,580) in United States Currency,* 454 F.Supp. 376, 381 (M.D.Fla. 1978). *See also United States v. One 1961 Cadillac Hardtop Automobile,* 207 F.Supp. 693, 698 (E.D.Tenn.1962) (right to intervene in forfeiture proceeding "extends to any person or party having a *legally recognized interest* in the [seized item], whether he is owner or lienholder, and whether that interest is legal or equitable in nature" (emphasis added)). Where, as here, the party challenging forfeiture is not the person in possession of the property at the time it was seized but instead purports to be an assignee of that person, the requirements for establishing standing are twofold. First, claimant must show that the assignment was valid, *i. e.* that it effectively conveyed to the assignee an interest in the subject property. *See United States v. Currency Totalling $48,318.08, supra,* at 213–14. Second, since it is well established that an assignee takes only the interest of its assignor, *Florida Bahamas Lines, Ltd. v. Steel Barge "Star 800" of Nassau,* 433 F.2d 1243, 1246 (5th Cir. 1970); *United States v. Eleven Thousand Five Hundred and Eighty Dollars ($11,580) in United States Currency,*

---

**17.** THE COURT: Mr. Targ, let me interrupt you a little bit on the assignment. I really don't have much difficulty with the position that an assignment can be appropriate in this set of circumstances. I don't know unless you can indicate something other than or in the briefs that have been filed, whether I need any further argument on the assignability of the interest in the funds by the various parties.

I don't think there is any question that there has been no real issue as to prior ownership as far as I can see.

MR. TARG: No; it's never been ascertained of prior ownership, the validity of their possession. The Government has been unable to do that since they rapidly disappeared from the area.

THE COURT: I read that. It seems very logical to me that was the funds of the people that were there. I mean, it was found on their property.

MR. TARG: Certainly they had possession of it. Whether they were acting as couriers—

THE COURT: Right, that is something else. There is no suggestion it belonged to any other party.

MR. TARG: No, there is not, Your Honor.

THE COURT: I say the area I think I am primarily interested in is the area away from the assignment as to whether the Government had something more than a mere suspicion here, where they did have probable cause.

If you would direct your argument to that, I think it would be helpful.

MR. TARG: Okay, Your Honor.

**18.** Scattered provisions of the United States Code authorize forfeiture of money or property that has been connected in a prescribed manner with certain illegal activities, including narcotics peddling, 49 U.S.C. § 782, alcohol tax violations, 26 U.S.C. §§ 5612–5615, and a wide variety of other offenses. For a partial listing of federal statutory provisions relating to forfeitures, see Notes of the Advisory Comm. to Rule 54, Fed.R.Crim.P.

*supra,* at 381, claimant must demonstrate that its assignor(s) held a valid ownership interest in the seized property at the time of the assignment. *See id.*

The government argues that the district court erred in failing to require claimant to authenticate the ownership interests of Nachman, Murillo, and Arbelaez in the seized currency. Claimant relies on *United States v. Wright, supra,* as support for its argument that Nachman, Murillo, and Arbelaez' possession of the currency at the time of seizure, in the absence of a competing claim, establishes its entitlement to it.[19] The court in that case held, however, that "seizure of property *from someone* is *prima facie* evidence of the person's entitlement" and that a claimant "need not come forward with additional evidence of ownership" unless there are "serious reasons (presented by the government or adverse claimants) to doubt [the claimant's] right to the property seized from him." *Id.* at 939 (emphasis in original). As the government points out, claimant has offered no explanation for Nachman's or the two Colombian's possession of this large amount of currency. Under these circumstances, denial of ownership by the party

whose interest is sought to be proved may alone be sufficient to rebut the presumption of entitlement that arises from possession. *See Eleven Thousand Five Hundred and Eighty Dollars ($11,580) in United States Currency, supra,* at 381.[20] The further assertion by one of the parties in possession that he was acting as a paid courier provides an even stronger reason to doubt that party's entitlement.

As noted above, the validity of the assignment is as critical as the assignor's entitlement in establishing an assignee's standing to challenge a forfeiture. In this court's recent decision in *United States v. Currency Totalling $48,318.08, supra,* we upheld an assignee's standing and rejected the government's argument that the assignment was void for lack of consideration.[21] *Id.* at 213. Although the parties here have not raised an issue as to the validity of the assignment of the funds by Nachman, Murillo, and Arbelaez to their attorneys, Moran and Gold, we consider this question one proper for consideration by the district court on remand in light of the large sum of money involved here and the relatively minimal amount of legal services for which the money purportedly was exchanged.[22]

---

19. See note 16 *supra.*

20. In denying the claimant standing to contest forfeiture of money brought into the country without complying with federal reporting requirements, the court described the facts concerning ownership thusly:

    This Court has held that Mr. Bonilla-Restrepo was not the owner of the defendant currency. On June 5, 1975, he made statement upon statement against interest regarding the ownership of the currency. He explicitly and continually denied any interest in the currency. Mr. Bonilla has given contradictory statements in about equal numbers, first saying he had no interest or no claim in the money and, then later claiming an unspecified interest in the money. There has been no explanation regarding how an itinerant, out-of-work waiter might have acquired such a sizeable sum. As to the claims in the affidavit and subsequent assignment, the claimant Moran testified that Bonilla would have done and said anything to get out of jail. *United States v. Eleven Thousand Five Hundred and Eighty Dollars ($11,580) in United States Currency, supra,* at 381. The facts in the instant case, as characterized by the

government, are strikingly similar to those described by the court in the *Eleven Thousand Dollar* case. Claimant suggests that the initial disclaimers of ownership by the assignors in this case should somehow be discounted because made during police interrogation and without counsel. Moreover, claimant argues that these early disclaimers are outweighed by assignors' later contrary assertions and by physical evidence linking the three men to the suitcases. We leave these arguments for consideration by the district court in making findings as to ownership and ruling on the question of claimant's standing on remand.

21. There, as here, the alleged consideration for the assignment was legal services performed and to be performed by the assignee-claimant. The amount assigned in the *$48,318* case was considerably less than here, however, and the assignor's interest was not challenged in that case.

22. Claimant's depositions indicate that its first contact with Nachman, Murillo, and Arbelaez was shortly after their arrest and the seizure so that it cannot have rendered any legal services to them prior to that time. Moreover, all

For the reasons stated above, we remand and instruct the district court to hold a hearing to determine whether the claimant has standing in this proceeding, considering the validity both of the assignors' interest in the currency and of the purported assignment to appellee. If the court finds that the claimant has standing, it should then conduct a full trial on the merits of the government's forfeiture claim.

REVERSED and REMANDED.

charges brought against the three men in connection with the events surrounding the forfeiture were dropped soon after they were filed.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.