UNITED STATES of America, Plaintiff,

v.

Interest of Arthur Tommy NIXON and Dwynal Nixon In House and Property (Real and Personal) Located At Route 6, Box 86, Cullman, Alabama, and Any and All Proceeds of Said Property, Defendant.

Hope Developers, Inc., Intervenor.

No. CV83–HM–5838–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

Jan. 7, 1986.
Supplemental Order Jan. 16, 1986.

Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., for plaintiff.

Stephen J. Pettit, Cullman, Ala., for Hope Developers, Inc.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

This is an *in rem* forfeiture action brought by the UNITED STATES OF AMERICA pursuant to 21 U.S.C. § 881(a)(6).[1] The United States alleges in its amended complaint that the defendant real property situated in Cullman County, Alabama was furnished or intended to be furnished by Arthur Tommy Nixon[2] as collateral in exchange for marijuana.

This action is now before the Court upon the submitted motion of the United States for partial summary judgment in its favor on the issue of whether the government had probable cause to seize the real property in question and thus has met its burden of proof in this case.[3] The motion for partial summary judgment is opposed by Intervenor Hope Developers, Inc., an Alabama corporation.

The government's burden of proof in this type proceeding has recently been stated by the United States Court of Appeals for the Eleventh Circuit in *U.S. v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 903 (11th Cir.1985), as follows:

[I]n forfeiture actions under 21 U.S.C. § 881(a)(6), the government merely must demonstrate the existence of *"probable cause for belief"* that a substantial con-

nection exists between the property to be forfeited and the criminal activity defined by the statute," that is, the exchange of a controlled substance. *United States V. $364,960 in United States Currency*, 661 F.2d 319, 323 (5th Cir. Unit B 1981) (emphasis added). "Probable cause" refers to "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *Id.; United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th Cir.1980).... (footnotes omitted).

 In this circuit, the existence of probable cause to support a forfeiture is a matter of law. *Id.* at fn. 17. The United States may meet its burden of showing probable cause by use of hearsay. *Bush v. United States*, 389 F.2d 485 (5th Cir.1968).[4] Further, in a 21 U.S.C. § 881(a)(6) forfeiture action, circumstantial evidence can suffice to support a finding of probable cause. See *United States v. $364,960 in United States Currency*,[5] 661 F.2d at 324–25 (5th Cir. Unit B, 1981); *U.S. v. $4,255,000, supra*, at 904.

 Another legal issue to be here determined is whether the Court may properly consider evidence obtained and developed after the initial seizure in determining whether the government had probable cause to seize the defendant real property. The Eleventh Circuit has decided this issue

---

**1.** 21 U.S.C. § 881(a)(6) provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

**2.** Nixon was involved in narcotics trafficking from 1973 through 1983. He is currently serv-

ing an 11-year sentence in a federal correctional facility for illegal drug activities, among other things.

**3.** The motion for summary judgment alleges in part: "Upon the granting of this motion for partial summary judgment, the plaintiff would then move the Court to enter a certificate of reasonable cause pursuant to 28 U.S.C. § 2465 and to dismiss the action and release the defendant property from seizure."

**4.** The Eleventh Circuit in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**5.** Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, are binding precedent in this circuit. *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

in the affirmative and this United States District Court accordingly is bound. *U.S. v. $4,255,000*, 762 F.2d 895 at 902, fn. 12 (11th Cir.1985); see also *U.S. v. One 1978 Mercedes Benz, Four-Door Sedan*, 711 F.2d 1297, at 1302–03 (5th Cir.1983); and *United States v. Monkey*, 725 F.2d 1007, at 1011 (5th Cir.1984).

■ Applying the law hereinabove set out to the facts hereinafter stated, this Court concludes and holds that the government has demonstrated the existence of "probable cause for belief" that a substantial connection exists between the real property seized and the criminal activity defined by the statute, that is, the exchange of marijuana, and that the motion of the United States for partial summary judgment is therefore due to be granted.

The principal actor in this drama is Arthur Tommy Nixon, former husband of Dwynal Nixon in whose name the title to the defendant real property was vested until approximately one week before its November 25, 1983 seizure by the government.[6]

In October 1983 Dwynal Nixon and Douglas D. Goodlett, along with Mr. Goodlett's son, formed a closely held Alabama corporation by name of Hope Developers, Inc. to ostensibly engage in real estate development. It was capitalized at the minimum of $1,000.00. Douglas D. Goodlett subscribed for 500 shares, Dwynal Nixon for 499 shares and the third incorporator for 1 share. From the date of incorporation until at least the November 25, 1983 seizure Dwynal Nixon owned and continued to own 49% of the authorized, issued and outstanding shares of stock of Hope Developers, Inc., was its vice president and one of its three directors.

Approximately one week prior to the seizure by the government of the defendant real property Dwynal Nixon executed and delivered to Hope Developers, Inc. a warranty deed conveying the property in question to such grantee for a consideration therein recited to be "Ten Dollars and other valuable considerations." Admittedly, payment of the entire purchase price by the granted corporation was deferred by prearrangement between grantor and grantee with simultaneous execution and delivery of purchase money mortgage from grantee to Dwynal Nixon with provision for release of lots (land was to be parceled or subdivided) upon payment by mortgagor to mortgagee of specified amount per lot. This purchase money mortgage was in full force and effect and duly recorded on the date of the government's seizure of the property.[7] This arrangement placed Dwynal Nixon in the proverbial catbird's seat respecting the mortgaged real estate in her position as sole mortgagor who also owned 49% of the stock of the mortgagor corporation and at the same time served as its vice president and one of its directors. Tommy Arthur Nixon at the time of his contacts with the government undercover agents described in the succeeding paragraph was fully aware of his ex-wife's dealing and relationship with Hope Developers, Inc.

In October and November 1983, Arthur Tommy Nixon and others met with undercover federal narcotics agents to discuss a multimillion dollar marijuana transaction. Deposition of Arthur Tommy Nixon (hereinafter "Deposition") p. 7, lines 14–23; p. 8, lines 1–23; p. 9, lines 1–23; p. 10, lines 1–23; p. 11, lines 1–23; p. 12, lines 1–23; p. 13, lines 1–23; p. 14, lines 1–19; p. 15, lines 11–23; p. 16, lines 1–6. On November 12, 1983, Arthur Tommy Nixon offered to put up the defendant property as collateral for the marijuana exchange. Deposition p. 11, lines 11–23; p. 12, lines 1–23; p. 13, lines

---

**6.** The real property seized was purchased by Arthur Tommy Nixon from his mother at a time when he was married to Dwynal Nixon. She became the title holder in connection with the pre-seizure divorce proceeding which dissolved the bonds of matrimony between these two actors. A reasonable inference to be drawn from this evidentiary record is that Tommy and Dwynal were more than friendly following their divorce on down to the date of the seizure. Dwynal Nixon knew that Arthur Tommy Nixon was long involved in narcotics trafficking and that some of the proceeds used by him to purchase the property came from that source.

**7.** With no parcels or lots released therefrom.

1-6.[8] On November 25, 1985, an agreement was reached concerning the exchange, and part of the agreement was that Nixon would put up the defendant property as collateral for the exchange of marijuana. Deposition p. 15, lines 18–23; p. 16, lines 1–3; p. 30, lines 4–23; p. 31, lines 1–7. Nixon told the undercover agents that the defendant property was in his ex-wife's name, but led the agents to believe that that was no impediment to his use of the property as collateral. Deposition p. 16, lines 22–23; p. 17, lines 1–22; p. 31, lines 8–23; p. 32, lines 13–23. On November 27, 1985, Nixon and his cohorts were arrested and subsequently convicted of narcotics violations growing out of this proposed exchange. Deposition p. 16, lines 5–21; p. 34, lines 1–8 and 13–23; p. 35, lines 1–20.

On the basis of these described facts, many of which were obtained and developed by the government after the November 25, 1983 seizure, the Court herein enters a finding of probable cause.

An appropriate order granting the government's motion for partial summary judgment will be entered.

### ORDER

In conformity with Memorandum of Decision entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the motion of plaintiff UNITED STATES OF AMERICA for partial summary judgment in its favor in this action on the issue of whether the government had probable cause to seize defendant real property situated in Cullman County, Alabama, be and the same hereby is GRANTED and that partial summary judgment in favor of plaintiff United States of America on the issue of whether the government had probable cause to seize defendant real property is hereby GRANT-ED and ENTERED in the above entitled civil action.

### SUPPLEMENTAL ORDER

Pursuant to MOTION TO DISMISS of plaintiff United States of America filed in the above entitled *in rem* forfeiture action on January 13, 1986 and further pursuant to 28 U.S.C. § 2465, it is

ORDERED, ADJUDGED and DECREED that there was reasonable cause for the seizure of the defendant property based upon the Court's January 7, 1986 Order herein granting the United States of America partial summary judgment. And it is further

ORDERED, ADJUDGED and DECREED that the defendant real property be and the same hereby is RELEASED from seizure and that this *in rem* forfeiture action be and the same hereby is DISMISSED with prejudice.[1]

---

**8.** Nixon described the defendant property to the undercover agents: "I just told him that it was being subdivided and it was going to be half acre lots and that the property alone would probably be worth a quarter of a million dollars." Depositions p. 13, lines 1–4.

**1.** There is no pending counterclaim and all claimants other than Intervenor Hope Developers, Inc. have agreed to dismissal previously as set forth in the Court's June 24, 1985 Order herein.