728 F.Supp. 1406 (1990)
UNITED STATES of America, Plaintiff,
v.
TWENTY FIVE THOUSAND AND FIFTY-FIVE DOLLARS ($25,055.00), Kerwin Lockett, Defendant.
No. 89-0786C(6).
United States District Court, E.D. Missouri, E.D.
January 19, 1990.
Raymond Meyer, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
Ronald Rothman, St. Louis, Mo., for Kerwin Lockett.

MEMORANDUM OPINION
GUNN, District Judge.
The government brings this forfeiture action for $25,055 which it seized from a shoe box in the possession of Kevin McGruder. Kerwin Lockett has filed a claim for the money.
Pursuant to Fed.R.Civ.P. 52, the Court makes the following findings of fact and conclusions of law.

Findings of Fact
On February 22, 1988, D.E.A. Task Force Detective Larry Coulson was assigned to the Lambert-St. Louis International Airport. Detective Coulson had received information from airport security screening personnel that Kevin McGruder had passed through a checkpoint with a shoe box containing a substantial sum of money. Detective Coulson approached McGruder and from preliminary contact determined that he possessed the classic drug courier profile: he carried no identification, had purchased one way passage to Chicago with cash, he had no luggage, his answers to questions were evasive, and, of course, he carried a large sum of cash. With particular *1407 reference to the money, McGruder acknowledged that it was a five digit amount, but denied knowledge as to the exact amount, to whom it belonged or where he had received it or to whom it was to be delivered in Chicago. He disavowed any personal ownership of the money.
McGruder was advised that the box of money would be detained and that a search warrant would be sought. McGruder requested that he accompany D.E.A. agents to their office and signed a consent form allowing a search of the contents of the shoe box and his person. The subsequent search disclosed a mobile telephone and a bag of marijuana on McGruder. The shoe box contained $25,055.
A records check established that McGruder was wanted by Woodson Terrace, Missouri police for a misdemeanor narcotics charge, and he was held by the D.E.A. agents for that. A canine sniff search of the money gave clear indication that it had been in contact with narcotics.
During subsequent interrogation, McGruder stated to D.E.A. agents that the currency belonged to the claimant, Kevin Lockett, and that he (McGruder) was to deliver it to an unidentified woman in Chicago for some unknown purpose.
On February 24, 1988, claimant Kerwin Lockett appeared at D.E.A. offices claiming ownership of the money as having been gained from a worker's compensation check received in March of 1987 and allegedly to have been kept at his home since that time.
Prior to hearing in this action, the government served interrogatories upon Lockett and sought to depose him with regard to the nature of his ownership interest in the currency. Lockett asserted his fifth amendment rights and refused to answer any questions propounded to him inquiring as to the nature and basis of his claim of ownership to the money.
At the trial D.E.A. agents established that McGruder had a substantial history of narcotics trafficking, and, in particular, in obtaining cocaine from a source in Chicago. D.E.A. agent Shirley Armstead testified that a reliable informant gave information that Lockett and McGruder worked together in cocaine trafficking operations between Chicago and E. St. Louis, Illinois. The informant related to D.E.A. agents that Lockett had told the informant that the money subject to forfeiture in these proceedings was intended for the purchase of cocaine.
At the time of the hearing, McGruder had been indicted for drug law violations and was a fugitive from justice.
At the forfeiture hearing, an abundance of evidence from the government established a close connection between the subject currency and McGruder's illicit drug trafficking.
Contrarily, there was little or no connection, innocent or otherwise, between the $25,055 and the claimant. The only evidence that touched on any link between Lockett and a sizeable sum of money was the testimony of Joseph Samuelson, an attorney from Illinois, who handled a worker's compensation matter for Lockett in 1987. An award of $26,000 came from the worker's compensation claim, but the government through bank records was able to establish that the entire amount had been dissipated and not preserved at Lockett's home as he had alleged. Lockett did not appear at the forfeiture proceeding, and, as noted, had refused to answer any questions regarding anything pertaining to those proceedings.

Conclusions of Law
28 U.S.C. § 1355 gives the Court jurisdiction over this forfeiture proceeding. 21 U.S.C. § 881(a)(6) provides for forfeiture of all monies "used or intended to be used to facilitate any violation of this subchapter...."
The government has the initial burden of showing probable cause for the forfeiture suit by showing probable cause for belief that there is substantial nexus between the subject property and an exchange for a controlled substance. The burden then shifts to the claimant to show by a preponderance of the evidence that the property was to be used for legitimate *1408 purpose. United States v. Thirteen Thousand Dollars in United States Currency, 733 F.2d 581, 584 (8th Cir.1984); United States v. Three Hundred Sixty Four Thousand Nine Hundred and Sixty Dollars in United States Currency, 661 F.2d 319, 323 (5th Cir.1981); United States v. Two Thousand Three Hundred Fifty Five Dollars and Ninety-Six Cents, 647 F.Supp. 1460 (E.D.Mo.1986).
The Court is fully cognizant of troublesome issues raised by the drug courier profile as a matter of substantive evidence. United States v. White, 890 F.2d 1012 (8th Cir.1989); United States v. White, 890 F.2d 1413 (8th Cir.1989). But that concern does not pertain in this instance. Rather, United States v. Pantazis, 816 F.2d 361 (8th Cir.1987), is appropriate to the circumstances of this case and whether there was a proper investigative stop, search and seizure of the subject money subject in this action:
A law enforcement officer may briefly detain a traveler's luggage to perform a limited investigation when the facts available to the officer "lead him reasonably to believe that a traveler is carrying luggage that contains narcotics." United States v. Place, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983); see also United States v. Wallraff, 705 F.2d 980, 989 (8th Cir.1983). Reasonable suspicion arises from specific articulable facts then known to the officer together with the rational inferences the officer may draw from them in light of the officer's experience. Terry v. Ohio, 392 U.S. 1, 21-22, 27, 88 S.Ct. 1868, 1879-80, 1883, 20 L.Ed.2d 889 (1968). Thus, we view the observations of law enforcement officers as a whole and in light of their training and experience in discerning the practices of drug couriers. United States v. Sadosky, 732 F.2d 1388, 1393 (8th Cir.), cert. denied, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984); Wallraff, 705 F.2d at 988. Conduct appearing innocent to an untrained observer may be significant to a narcotics agent. Wallraff, 705 F.2d at 988.
Id. at 363. See also United States v. Goldstein, 635 F.2d 356, 361-62 (5th Cir.1981); United States v. Waltzer, 682 F.2d 370, 372 (2nd Cir.1982); United States v. Robinson, 707 F.2d 811, 815 (4th Cir.1983); United States v. Klein, 626 F.2d 22, 27 (7th Cir.1980).
It is also significant that a substantial amount of cash was involved which would allow the inference that something foul is afoot regarding narcotics trafficking. United States v. $364,960, 661 F.2d 319, 323 (5th Cir.1981); United States v. $55,518.05, 728 F.2d 192, 196 (3rd Cir.1984). And in this case the search of the shoe box and of McGruder's person was consensual. See Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983); United States v. Clark, 743 F.2d 1255, 1258 (8th Cir.1984).
The government need not prove a substantial connection, but merely "demonstrate the existence of `probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute. ...'" United States v. $4,255,000, 762 F.2d 895, 903 (11th Cir.1985) (original emphasis). And while the probable cause does not require certainty, the government must establish that it exists by more than mere suspicion. United States v. Sweeney, 688 F.2d 1131, 1137 (7th Cir.1982); United States v. $93,685.61, 730 F.2d 571, 572 (9th Cir.1984). The belief must be reasonable, albeit requiring something less than prima facie proof. United States v. $319,820, 620 F.Supp. 1474, 1477 (D.Ga.1985).
The facts and circumstances of this case regarding McGruder's actions, responses to questions, the possession of a large amount of money, the dog sniff alert, his possession of a quantity of marijuana give probable cause that the money was substantially connected with illegal narcotics activities as contemplated by 21 U.S.C. § 881(d). United States v. Wallraff, 705 F.2d 980, 988 (8th Cir.1983); United States v. $215,300, 882 F.2d 417, 419 (9th Cir. 1989); United States v. Certain Real Property, 568 F.Supp. 434, 436 (W.D.Ark. 1983). The large quantity of money involved infers a linkage to drug trafficking. *1409 United States v. $364,960, 661 F.2d 319, 324 (5th Cir.1981).
But there is substantially more to connect the money to drug trafficking. Through a reliable informant, D.E.A. agents knew of both McGruder's and Lockett's drug dealings, independently and together, with Chicago as their source of cocaine. The testimony relied on to establish this illicit behavior, although hearsay, is proper to establish probable cause in a forfeiture proceeding. United States v. 1964 Beechcraft Baron Aircraft, 691 F.2d 725 (5th Cir.1982); see also Ted's Motors v. United States, 217 F.2d 777, 780-81 (8th Cir.1954).
Claimant Lockett contends that the government may not utilize information acquired after the seizure regarding McGruder's and Lockett's illegitimate activities. And, indeed, the D.E.A. agents did obtain the informant's information after the seizure of the money. But this does not enervate the substantial connection between McGruder's and Lockett's drug dealings and the money. The following from United States v. $41,305, 802 F.2d 1339 (11th Cir.1986) regarding subsequent knowledge of relevant facts is directly on point:
The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. The government must merely furnish probable cause, i.e., reasonable grounds to believe that a substantial connection exists between the money seized and Hoback's drug dealing. See United States v. $364,960.00 in U.S. Currency, 661 F.2d 319, 323 (5th Cir. Unit B 1981). Furthermore, probable cause may be based wholly on circumstantial evidence, see id. and that evidence may include facts learned after the actual seizure of the money. See United States v. $4,255,000, 762 F.2d 895, 902 n. 12 (11th Cir.1985) (emphasis added).
Id. at 1343.
The government has shown probable cause for the institution of this forfeiture suit and a substantial link between the money and drug trafficking. With the government making its proper showing, the burden is placed on Lockett to "prove that he ... is the owner of the property subject to the forfeiture action." United States v. One (1) 1976 Cessna Model 210L Aircraft, 890 F.2d 77 (8th Cir.1989). See also United States v. One 1971 Lincoln Continental Mark III, 460 F.2d 273, 274 (8th Cir.1972). If the claimant proves ownership, he must then establish by a preponderance of the evidence that the money was not intended to be used for illegal drug operations. United States v. Thirteen Thousand Dollars, 733 F.2d at 584.
The record in this case is destitute of any evidence showing Lockett as owner of the money. He did not appear at trial nor offer anything that would indicate his ownership of the money. While asserting that his fifth amendment rights cannot be used against him, United States v. U.S. Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), that does not alter the fact that Lockett has produced nothing else of any substance to show his ownership of the money.
Baker v. United States, 722 F.2d 517 (9th Cir.1983), provides relevant answer to Lockett's fifth amendment claim:
The Fifth Amendment does not prevent us from demanding more than conclusory or hearsay allegations of some "interest" in the forfeited property. [United States v.] Fifteen Thousand Five Hundred Dollars, 558 F.2d [1359] at 1361 [(9th Cir.1977)]; United States v. U.S. Currency Amounting to Sum of $30,800.00, 555 F.Supp. 280, 283 & n. 3 (E.D.N.Y.1983). The danger of false claims in these proceedings is substantial. See United States v. $364,960.00 in U.S. Currency, 661 F.2d 319, 326-27 (5th Cir.1981). We require claimants to allege and prove a valid property interest in the forfeited items.
Id. at 519.
Although attorney Samuelson testified that he had represented Lockett in a much earlier worker's compensation proceeding, the government was able to show that funds received had long been dissipated. *1410 Lockett has shown nothing, or at best a mere possibility of the legitimate source of cash. This does not meet his burden. United States v. $41,305, 802 F.2d at 1345.
Lockett's counsel contends that a time delay factor in the government's filing of this action has somehow prejudiced his client. No evidence has been presented to the Court to show any prejudice to claimant nor any effort on his part to seek relief. See United States v. $8,850, 461 U.S. 555, 569, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).
Judgment for the government granting forfeiture and denying claimant's claim.