2 F.3d 1151
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
CERTAIN REAL PROPERTY LOCATED AT 570 LATHERS, Garden City,
Michigan, Together with all Improvements, Fixtures
and Appurtenances, Defendant-Appellant,
Mark T. Cahill, Claimant-Appellant.
 No. 92-1918.
 United States Court of Appeals, Sixth Circuit.
 Aug. 12, 1993.
 
 Before: RYAN and BOGGS, Circuit Judges and ECHOLS, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Claimant Mark Cahill appeals from the district court's summary judgment for the government in a civil forfeiture action brought against the defendant real property. Cahill contends that the district court erred in finding he lacked standing to contest the civil forfeiture of the property.
 
 
 2
 Agreeing with Cahill as to the standing determination, we shall reverse and remand to the district court in order that proceedings on the merits may be conducted.
 
 I.
 
 3
 Two officers from the Garden City, Michigan Police Department were dispatched to a house located at 570 Lathers Street in Garden City. A neighbor had called the "911" emergency number in response to a domestic disturbance at the residence. Upon arriving, officers knocked on the door. A woman bleeding from the nose and mouth answered the door. Mark Cahill appeared at the door with blood on his shirt. Cahill contends that the officers then entered the house without permission and conducted an unauthorized search of the house. The officers maintained their entry was a "protective sweep," designed to secure the premises.
 
 
 4
 While "sweeping" the house, one of the officers found a marijuana cultivation operation in the basement. After the "sweep" was concluded, the officers secured the premises and only then obtained a state search warrant for the house. When police searched the house they found over 200 marijuana plants, over 300 seedlings, growing lights, 1/4 ounce of marijuana, and copies of "High Times" magazine. They also recovered a shotgun in a bedroom.
 
 
 5
 Thereafter, Cahill was arrested and charged with manufacturing illegal drugs. He was bound over for trial in state court. The Michigan court granted Cahill's motion to suppress evidence seized from the 570 Lathers location, finding that the officers' search was illegal. The court eventually dismissed the state charges against Cahill, though not before the present forfeiture action was brought in federal court.
 
 
 6
 After a finding of probable cause by a United States magistrate judge, federal law enforcement officials obtained a seizure warrant for the defendant real property, pursuant to 21 U.S.C. Sec. 881(a)(3) and (7). This warrant directed federal marshals to seize the real property.
 
 
 7
 The government then filed a civil complaint for forfeiture in rem. At the time of the filing of the complaint, a warrant of "arrest" against the property was obtained from the district court clerk. Named in the complaint, as the person believed to be in possession of the real property, was Cahill. The government prepared a set of interrogatories directed to Cahill. On this same day, the marshals executed the seizure warrant by posting the defendant real property with notice of the seizure and by personally serving Cahill with a copy of the complaint, a copy of the warrant, and a copy of the interrogatories.
 
 
 8
 Pursuant to the supplementary forfeiture rules, Cahill filed a verified claim to the property on February 11, 1991. He also filed an answer to the complaint at this same time. In his claim, Cahill asserted that he was "the owner of the property in question pursuant to a Warranty Deed dated August 25, 1987." In his answer to the government's complaint, Cahill stated that he "admits ownership of said property."
 
 
 9
 Cahill also filed a document entitled "Objections to Interrogatories and Request for Production of Documents," in response to the government's interrogatories, wherein he refused to file answers to the government's interrogatories, instead asserting a broad Fifth Amendment privilege. Cahill referenced his pending trial in the Michigan court, and further stated that
 
 
 10
 [a]ny answers provided may be construed to be a waiver of [his] privilege against self-incrimination or may otherwise be used against him in the state criminal proceeding.
 
 
 11
 In response, the government served Cahill with a notice of deposition duces tecum, along with a deposition subpoena directing him to appear for deposition with any relevant documents on March 8, 1991. Cahill's counsel advised the government that Cahill objected to being subpoenaed, and that if he appeared, he would assert a Fifth Amendment privilege. The government agreed that, under the circumstances, Cahill need not appear.
 
 
 12
 On March 29, 1991, the government filed its motion and brief for summary judgment on two grounds. First, the government alleged that Cahill had failed to meet his burden of proving an ownership in the property, and thus had failed to establish standing to challenge the forfeiture of the property. Second, the government contended that Cahill's refusal to participate in discovery and his blanket Fifth Amendment assertion left the government's allegations unrebutted. Since there were no material facts in dispute, the government maintained, summary judgment for the government was proper.
 
 
 13
 In response to the government's motion for summary judgment, Cahill again "admitted" ownership of the defendant real property. He also stated that "ownership has been verified by the Government in its affidavit in support of the seizure warrant."
 
 
 14
 The district court referred the government's summary judgment motion to a magistrate judge, who issued a report and recommendation indicating that the government's motion should be granted. Cahill filed objections. After de novo review, the district court adopted the magistrate judge's report and recommendation, and entered summary judgment for the government. The district court also entered a judgment and final order of forfeiture in favor of the government. Cahill timely appealed.
 
 II.
 A.
 
 15
 Cahill contends that the district court erred in finding he lacked standing to challenge the forfeiture of the defendant real property. He argues that standing was established because the pleadings demonstrate that he holds title to the property, that he holds a sufficient financial interest in the property, and that he had actual possession of the property at the time of his arrest and at the time of the seizure of the property.
 
 
 16
 The government, in contrast, contends that Cahill bears the burden of proving his ownership of the property as a threshold matter. If real ownership is not established, as the government contends occurred here, the potential claimant has not established standing. The government maintains that Cahill failed to provide it any information concerning ownership to the property, and thus that the district court's finding that he lacked standing was proper.
 
 B.
 
 17
 This court conducts a de novo review of a district court's determination that a party lacks standing. Estate of Fink v. United States, 852 F.2d 153, 154-55 (6th Cir.1988).
 
 
 18
 The forfeiture provisions in 21 U.S.C. Sec. 881(a)(3) and (7) provide a complex, burden-shifting scheme for the federal government to obtain "real property ... used ... in any manner or part, to commit, or to facilitate the commission of a violation of [the felony drug laws]." 21 U.S.C. Sec. 881(a)(7). First, the government must establish probable cause to believe that a substantial connection exists between the property to be forfeited and the illegal drug activity. United States v. Lots 12, 13, 14 and 15, Keeton Heights, 869 F.2d 942, 946 (6th Cir.1989). Probable cause is defined as "a reasonable ground for belief, or guilt, supported by less than prima facie proof but more than mere suspicion." United States v. 339 South Lake Drive, 1991 WL 270114, * 2, 1991 U.S.App. LEXIS 29860, * 5 (Dec. 13, 1991).
 
 
 19
 Once the government succeeds in showing probable cause, the burden shifts to the claimant, who must prove, by a preponderance of the evidence, that the property is not subject to forfeiture. United States v. 526 Liscum Drive, 866 F.2d 213, 216 (6th Cir.1988). As the statute puts it, "where the property [subject to forfeiture] is claimed by any person, the burden of proof shall lie upon such claimant...." 19 U.S.C. Sec. 1615. An integral element of this showing is the requirement that a claimant show a sufficient interest in the defendant property to establish standing to challenge the forfeiture. Id.; see also, United States v. 339 South Lake Drive, 1991 WL 270114, * 2, 1991 U.S.App. LEXIS 29860, * 5 (6th Cir. Dec. 13, 1991) (citing 526 Liscum Drive, 866 F.2d at 216); United States v. One 18th Century Colombian Monstrance, 797 F.2d 1370, 1375 (5th Cir.1986); United States v. $364,960 in United States Currency, 661 F.2d 319, 326 (5th Cir.1981).
 
 
 20
 Out of a concern for "straw man" transfers of property from drug defendants to third parties and assertions of ownership by claimants who have no legal interest in property subject to forfeiture, courts require that a claimant prove "real ownership" in the property subject to forfeiture. 526 Liscum Drive, 866 F.2d at 216. On one hand, bare legal title, "in the absence of dominion, control, or some other indicia of ownership, is insufficient to establish standing to challenge the seizure." Id. On the other hand, "naked possession" of the property can likewise be insufficient to confer real ownership, and hence standing. United States v. $321,470.00 in United States Currency, 874 F.2d 298, 301 (5th Cir.1989). Given the proper pleading by the claimant, and based on the unique facts of a case, however, possession may be enough for real ownership. United States v. Wright, 610 F.2d 930, 939 (D.C.Cir.1979).
 
 
 21
 This appeal, however, does not present a typical situation. Here, the real question is not the extent or quality of Cahill's ownership interest in the defendant real property; rather, the question is whether he submitted sufficient "proof of his ownership interest," One 18th Century Colombian Monstrance, 797 F.2d at 1375, to establish standing, and hence to avoid summary judgment on the standing issue. In order to make this determination, we must examine the "pleadings, depositions, answers to interrogatories, and admissions on file." Fed.R.Civ.P. 56(c).
 
 
 22
 First, Cahill asserted in his claim that he was "the owner of the property in question pursuant to a Warranty Deed dated August 25, 1987." Similarly, in his answer to the government's complaint, Cahill stated that he "admits ownership of said property." Finally, in his answer to the government's motion for summary judgment, Cahill again "admitted" ownership of the defendant real property, stating that "ownership has been verified by the Government in its affidavit in support of the seizure warrant." Attached to this response to the government's motion for summary judgment were two affidavits--one from Cahill, and one from his girlfriend, Julie Edds. These affidavits also contain statements by the affiants that Cahill is the true owner of the defendant real property.
 
 
 23
 It is clear that Cahill could have produced more concrete evidence of his ownership or possession of the real property. He could have, for instance, produced a photocopy of the deed whereby he took title to the property to demonstrate ownership. Similarly, he could have produced a property tax assessment showing him as the property owner. As to possession, Cahill might have produced utility bills. We are nonetheless satisfied that his sworn statements and the affidavit of his girlfriend, which went uncontroverted, introduced sufficient evidence of ownership and/or possession to confer upon Cahill standing to challenge the forfeiture. Our determination is buttressed by the fact that the government has never alleged that any straw man transfers have occurred here. Indeed, the government concedes that Cahill is the only conceivable owner of the defendant real property.
 
 III.
 
 24
 For the foregoing reasons, we REVERSE the district court's determination that Cahill failed to establish standing to challenge the defendant real property's forfeiture, and REMAND in order that proceedings on the merits may go forward. We express no opinion as to the propriety of granting the government's motion for summary judgment.