647 F.Supp. 1460 (1986)
UNITED STATES of America, Plaintiff,
v.
TWO THOUSAND THREE HUNDRED FIFTY-FIVE DOLLARS AND NINETY-SIX CENTS, Defendant.
No. 86-1281C(1).
United States District Court, E.D. Missouri, E.D.
November 19, 1986.
Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.
R. Terrence Jeep, Fredman, Fredman, Kopf & Jeep, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This forfeiture action arises from the government's seizure of $2,355.96 from the residence of the claimant, Arnold Mitchell. Pursuant to a search warrant, government agents entered the claimant's residence in search of narcotics and related items. During the search, the agents seized, among other things, currency in the amount of $2,355.96. The claimant now seeks recovery of that money.
This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 52.

FINDINGS OF FACT
1. Between July and November of 1985, Detective Salvatore Cira of the St. Louis Police Department was investigating the involvement of Andrea Williams in cocaine *1461 trafficking. During this period, he made five purchases of cocaine from Williams. The first four sales were in the amount of $150.00. He did not see the claimant Arnold Mitchell at these sales. Shortly before the fifth sale, Mitchell, carrying a small brown bag, met Williams in front of her residence. Mitchell left one and one-half minutes later. While Williams was still outside, she approached Detective Cira and consummated the fifth sale for $650.00. Approximately two hours later, Mitchell returned to Williams' residence only to leave shortly afterwards. Mitchell's arrivals and departures were seen by a second police officer, Detective Ronald Klier.
2. On January 13, 1986, Williams was arrested for her sales to Detective Cira. Williams told the police that Mitchell supplied her and three others with cocaine for sale to users. A confidential informant of proven reliability also implicated Mitchell in cocaine sales. The informant told the police that Mitchell had cocaine and a large amount of currency at Mitchell's residence. Mitchell resided at 4776 Greer in St. Louis with his girlfriend, Mary L. Rutlin, and her five children.
3. With this information, Detective Klier applied for and received a search warrant for 4776 Greer. The warrant listed the following items as the basis for the search: cocaine, currency used to buy and sell cocaine, handguns, and records of narcotics transactions.
4. Late in the afternoon on July 13, 1986, Detectives Cira and Klier, two DEA agents, and other city police officers executed the search warrant for 4776 Greer. After entering the house, the police gathered Mitchell and the other occupants in the front room on the first story of the house.
5. In a bedroom on the second story, the officers found a safe. The safe contained the following items relevant to this lawsuit: a silver ashtray, a smaller silver tray, a silver spoon, a roll of plastic sandwich bags, a plastic sandwich bag containing white powder, $2,355.00 in U.S. currency, 96 cents in coins, miscellaneous papers, and assorted jewelry. The currency was packaged mostly in three bundles secured by rubber bands. Two bundles contained $1,000.00, one package contained $300.00, and the remaining currency was not packaged. The currency found in the safe is the subject of this forfeiture proceeding.
6. In the same bedroom, the officers also found a triple beam balance scale.
7. While at the house, the officers did not test any items for the presence of cocaine. Subsequent laboratory tests revealed traces of cocaine on the spoon, the small tray, and the pan of the scale. The white powder in the plastic sandwich bag was determined not to be cocaine or other common illicit drugs.
8. The claimant could not explain the presence of the white powder in the safe but identified the powder as baking powder or baking soda which he used as an underarm deodorant. Testifying for the plaintiff, the city criminologist opined that the color and consistency of the powder made it appropriate for use as a cocaine cutting agent. The Court credits the testimony of the plaintiff's witness.
9. Detective Cira, with two and one-half years experience in the Narcotics Division, testified that triple beam balance scales are commonly used for accurate weighing of illegal drugs. He testified that the two metal trays were suitable for the weighing, mixing, and storing of cocaine. He also testified that the type of sandwich bags seized were commonly used in drug sales and that the cocaine in the fifth purchase from Williams was contained in such a plastic bag. The claimant testified that he had not been involved in cocaine sales. The claimant offered that the trays were items he welded at work. Regarding the scale, the claimant testified that it was used to weigh food for his girlfriend's grandmother, a diabetic. The claimant did not know the origin of the spoon or the source of the cocaine traces.
Based upon the proximity of these items, their location in a safe, their ability to be *1462 used in cocaine handling, and the traces of cocaine, this Court rejects the claimant's testimony that he was not involved with cocaine dealing.
10. Mitchell and Rutlin owned rental property at 4225 Athelon in St. Louis. After deciding to renovate this property, Mitchell and Rutlin entered into a contract with A & J Management Company. Claimant's Exhibit B. A & J Management Company agreed to repair the building for $5,700.00; Mitchell and Rutlin agreed to pay upon completion of the work. To finance these improvements, Mitchell and Rutlin applied for a HUD-guaranteed loan from Commerce Bank. On January 10, 1986, Mitchell and Rutlin received the principal of this loan in the form of a cashier's check for $5,700.00. They cashed the check on that day and gave $5,700.00 in cash to Charles Cobbs and Jerome Gates of A & J Management Company. On or about January 11, 1986, Cobbs and Gates returned $2,797.24 to Mitchell and Rutlin. Claimant's Exhibit C. As Mitchell explained, the repair work cost less than anticipated by the contract. Mitchell received the rebate in cash packaged in bundles. This Court credits Mitchell's testimony that this rebate constitutes the currency seized by the police on January 13, 1986. The claimant did not offer evidence of his intended use of the currency.

CONCLUSIONS OF LAW
The United States seeks forfeiture under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of "[a]ll monies ... furnished or intended to be furnished by any person in exchange for a controlled substance..., all proceeds traceable to such an exchange, and all monies ... used or intended to be used to facilitate any violation of this subchapter...." Under 19 U.S.C. § 1615, made applicable to this action by 21 U.S.C. § 881(d), the government has the initial burden of showing probable cause for the institution of the forfeiture suit. United States v. Thirteen Thousand Dollars in United States Currency, 733 F.2d 581, 584 (8th Cir.1984); United States v. Twenty-Two Thousand Two Hundred and Eighty-Seven Dollars in United States Currency, 709 F.2d 442, 446 (6th Cir.1983). More specifically, the government must show probable cause for belief that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance. United States v. Three Hundred Sixty-Four Thousand Nine Hundred and Sixty Dollars in United States Currency, 661 F.2d 319, 323 (5th Cir.1981).[1] Upon a showing of probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property was not used in violation of the law. Thirteen Thousand Dollars, 733 F.2d at 584; Twenty-Two Thousand Two Hundred and Eighty-Seven Dollars, 709 F.2d at 446.
The claimant asserts that the government failed to show probable cause for forfeiture of the money  that is, the government failed to show a substantial connection between the money and the cocaine trafficking. In this assertion, this Court finds the claimant in error. Based upon their investigation, Detectives Cira and Klier reasonably believed Mitchell dealt in cocaine. See Findings of Fact Nos. 1 and 2. The fruits of their search *1463 confirmed this belief. See Findings of Fact Nos. 5, 6, 7, 8, and 9. Moreover, the defendant currency was found in close proximity to the cocaine paraphernalia, see Findings of Fact No. 5 and 6, and the detectives had evidence of sales by Mitchell sufficient to generate large sums of cash. See Findings of Fact Nos. 1 and 2. Thus, the government had probable cause to institute this proceeding.
The Court must now consider whether the claimant has shown, by a preponderance of the evidence, that the defendant currency was not connected with cocaine trafficking.
The claimant has demonstrated a legitimate source of the money. The claimant obtained the loan just two days before the search. The construction contract justifies the loan, and the rebate explains the presence of the cash in the claimant's safe. Thus, the claimant has demonstrated that the source of the money was unconnected to drug dealing. Nevertheless, the claimant fails to sustain his burden of proof.
Section 881 contemplates the forfeiture of both proceeds from drug sales and money "intended to be furnished ... in exchange for a controlled substance" or "intended to be used to facilitate" drug transactions. The claimant showed the money was not the proceeds of a drug deal but failed to show the money was not capital or "seed money" for future drug purchases.
The evidence supports a conclusion that the money was intended for cocaine purchases. Two informants identified the claimant as a cocaine dealer. See Findings of Fact No. 2. The claimant had participated in recent deals, see Findings of Fact No. 1, and the claimant possessed articles of drug paraphernalia, some of which revealed traces of cocaine. See Findings of Fact Nos. 5, 6, 7, 8, and 9. Moreover, the claimant did not offer an alternative use for the cash. Thus, the claimant failed to show that, more likely than not, the money was not intended for use in drug trafficking.
In reaching this conclusion, the Court notes that the government did not prove any particular future use of the money. For example, the government did not offer evidence of a drug deal waiting to be completed upon receipt of the construction rebate. However, such a showing is not required of the government. Indeed, to require the government to prove an intended use would impermissably shift the burden of proof to the government. Therefore, for the reasons set out above, this Court orders forfeiture of the defendant currency upon the plaintiff's complaint.
NOTES
[1] As the Eighth Circuit held in United States v. One 1976 Ford F-150 Pick-Up, 769 F.2d 525, 527 (8th Cir.1985), the government failed to show that a truck seen at a marijuana field facilitated the illegal activity or was otherwise "substantially associated" with the marijuana farm. The court cited other cases which phrased the requirement somewhat differently: United States v. One 1972 Chevrolet Corvette, 625 F.2d 1026, 1029 (1st Cir.1980) (must be "substantial connection between the property and the underlying criminal activity"); United States v. One 1974 Cadillac Eldorado, 575 F.2d 344, 345 (2d Cir.1978) (must be "sufficient nexus" between vehicle and illegal activity). This Court does not ascribe any significance to the differences among these various verbal formulations; each standard is the same. The connection between the item to be forfeited and the illegal activity must be a connection of substance. But see United States v. One 1978 Mercedes Benz, 711 F.2d 1297, 1303-04 (5th Cir.1983) (government must show only that property was used in any manner to facilitate sale of controlled substance).