**UNITED STATES of America, Plaintiff,**

**v.**

**FIVE THOUSAND SEVEN HUNDRED FORTY THREE DOLLARS ($5,743.00), Defendant.**

**No. 89–1422–C(6).**

United States District Court,
E.D. Missouri.

July 11, 1990.

Daniel Meuleman, Asst. U.S. Atty., St. Louis, Mo., for U.S.

Coggan R. Mills, Clayton, Mo., for claimant Ocelia Blackmon.

## MEMORANDUM OPINION

GUNN, District Judge.

The government brings this forfeiture action for $5,743.00 which it seized from a safety deposit box at Jefferson Bank and Trust on April 27, 1988. Ocelia Blackmon has filed a claim for the money.

Pursuant to Fed.R.Civ.P. 52, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

At the trial of this matter, government witness Peter Gober, a St. Louis Police officer assigned to the narcotics division, testified that in early April 1988, Eugene Jones, a confidential informant, told Gober that individuals were selling phencyclidine ("PCP") at a house on Carter Avenue. Jones took St. Louis City police officers to Carter Avenue and pointed out the house at 4535 Carter. Jones indicated that he had been present at drug transactions at the house and that the "dip" sold there (More cigarettes dipped in PCP) was passed through the mail slot to the buyer who, in turn, passed money through the mail slot into the house.

On April 4 and 5, 1988, a police surveillance team at the Carter address observed several people come to the house and conduct transactions of the type described by Jones. Based upon the affidavit of Detective Ceriotti, entered into evidence as Government's Ex. 2, the City police obtained a search warrant for 4535 Carter Avenue, which they executed on April 6, 1988.

Upon entering the house, police officers found Ocelia Blackmon in a bedroom, lying on the bed. On the nightstand beside the bed they found PCP, a More cigarette dipped in PCP and wrapped in tin foil, and other drug paraphernalia. In the back bedroom, belonging to Ocelia Blackmon's son, Carl Blackmon, the officers found a full bottle of PCP under the bed. Gober testified that the amount found had an approximate street value of $50,000 which, in his experience, indicated that the drug was intended for distribution.

The officers did not find any money in the house, although they had observed money being passed into the mail slot during surveillance of the house. Jones indicated that the Blackmons were keeping the proceeds of their drug trafficking in a safe deposit box at Jefferson Bank & Trust Co.

After learning that the Blackmons did, in fact, keep a safe deposit box, # 1451, at the Jefferson Bank & Trust Co., the police obtained another search warrant for the box. Government's Ex. 3. When they executed that search warrant, the police found that the safe deposit box was "stuffed" with currency, all used, in denominations of 5, 10 and 20 dollars, aggregating $5,743.00.

On April 3, 1989 Ocelia Blackmon received a suspended imposition of sentence on her guilty plea to the charge of possession phencyclidine in connection with the execution of the search warrant at her home.

Ocelia Blackmon testified on her own behalf at trial. She testified that she had owned the safe deposit box at Jefferson Bank since before two of her children, Carl and Carolyn, were born. She indicated that one of the children's names might have also been on the box, but that at any rate the other name would have been "C. Blackmon." Her children never went to the box, she said; only she deposited money in the box.

Mrs. Blackmon testified that there were several sources of the money in the safe deposit box. First, she stated that a third child, Eddie Morris, is disabled and received $300 in social security disability benefits each month. She would put a portion of that $300 in the safe deposit box each month. In addition, she stated that when Morris first began receiving the benefits, he was paid a lump sum of $800. She spent a portion of that sum on a suit for Morris, and deposited the remainder in the

safe deposit box. She stated that these deposits consisted of new bills enclosed in blue envelopes, "as it came from the government."

In addition, Blackmon testified that she had received a check in settlement of a personal injury claim for $2,700.00. She cashed that check and deposited the cash, in new bills with varying denominations, in the safe deposit box in a white envelope.

Blackmon also testified that a grandson, "Duwon," had received a cash reimbursement of some sort after having been in "Commonwealth." That money, of an unspecified amount, Blackmon also deposited in the safe deposit box.

Finally, Blackmon stated that occasionally she had money left over from her own social security check which she would deposit in the safety deposit box.

When she was shown the signature card for safe deposit box # 1451, Blackmon identified her signature and the card. Also noted on the card as a signatory was a "Carl Morris." Blackmon testified that "Carl Morris" was Carl Blackmon. Attached to the signature card were several "entrance tickets," apparently filled out upon a request to gain access to the safe deposit box. The eight tickets were all signed by "Ocelia Blackmon." Mrs. Blackmon verified that the signatures on the tickets were hers. All of the safe deposit box records were admitted into evidence as Government's Ex. 4.

Blackmon testified that she had been asleep in her bed when the police executed the search warrant on her home. She testified that there was no PCP in the room. She never smokes. She pleaded guilty to the charge of possession of PCP because she "had to." She stated that she had never been away from her children and she was told she would go to jail if she did not plead guilty.

No further evidence was submitted.

### Conclusions of Law

28 U.S.C. § 1355 gives the Court jurisdiction over this forfeiture proceeding. 21 U.S.C. § 881(a)(6) provides for forfeiture of all monies "used or intended to be used to facilitate any violation of this subchapter...."

■■■ The government has the initial burden of showing probable cause for the forfeiture suit by showing probable cause for belief that there is a substantial nexus between the subject property and an exchange for a controlled substance. The burden then shifts to the claimant to show by a preponderance of the evidence that the property was to be used for legitimate purpose. *United States v. Thirteen Thousand Dollars in United States Currency*, 733 F.2d 581, 584 (8th Cir.1984); *United States v. Three Hundred Sixty Four Thousand Nine Hundred and Sixty Dollars in United States Currency*, 661 F.2d 319, 323 (5th Cir.1981); *United States v. Two Thousand Three Hundred Fifty Five Dollars and Ninety–Six Cents*, 647 F.Supp. 1460 (E.D.Mo.1986).

■ The government need not prove a substantial connection, but merely "demonstrate the existence of '*probable cause for belief* that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute....'" *United States v. $4,255,000*, 762 F.2d 895, 903 (11th Cir.1985) (original emphasis). And while the probable cause does not require certainty, the government must establish that it exists by more than mere suspicion. *United States v. Sweeney*, 688 F.2d 1131, 1137 (7th Cir.1982); *United States v. $93,685.61*, 730 F.2d 571, 572 (9th Cir.1984). The belief must be reasonable, albeit requiring something less than prima facie proof. *United States v. $319,820*, 620 F.Supp. 1474, 1477 (D.C.Ga.1985).

■ The facts and circumstances of this case regarding Ocelia Blackmon's location in the house, her proximity to drugs, the large amount of drugs found in the adjoining bedroom and the activities observed during police surveillance create probable cause to believe that the money found in Ocelia Blackmon's safe deposit box was substantially connected with illegal narcotics activities as contemplated by 21 U.S.C. § 881(d). *United States v. Wallraff*, 705

F.2d 980, 988 (8th Cir.1983); *United States v. $215,000*, 882 F.2d 417, 419 (9th Cir. 1989); *United States v. Certain Real Property*, 568 F.Supp. 434, 436 (W.D.Ark. 1983). The large quantity of money involved infers a linkage to drug trafficking. *United States v. $364,960*, 661 F.2d 319, 324 (5th Cir.1981).

■ There is substantially more to connect the money to drug trafficking. Through a long-used and often-proven informant, St. Louis Police officers knew of the Blackmons' drug trade and of their safe deposit box repository for the proceeds therefrom. The testimony relied on to establish this illicit behavior, although hearsay, is proper to establish probable cause in a forfeiture proceeding. *United States v. 1964 Beechcraft Baron Aircraft*, 691 F.2d 725 (5th Cir.1982); *see, also, Ted's Motors v. United States*, 217 F.2d 777, 780–81 (8th Cir.1954).

The government having shown probable cause for the institution of this forfeiture suit and a substantial link between the money and drug trafficking, the burden then shifts to Ocelia Blackmon to "prove that [s]he ... is the owner of the property subject to the forfeiture action." *United States v. One (1) 1976 Cessna Model 210L Aircraft*, 890 F.2d 77 (8th Cir.1989). *See, also, United States v. One 1971 Lincoln Continental Mark III*, 460 F.2d 273, 274 (8th Cir.1972). If the claimant proves ownership, she must then establish by a preponderance of the evidence that the money was not furnished or intended to be furnished in exchange for a controlled substance. *United States v. Thirteen Thousand Dollars*, 733 F.2d at 534; *United States v. Fleming*, 677 F.2d 602, 609 (7th Cir.1982). The claimant can meet her burden by showing an alternate source for the funds. *United States v. $41,305.00 in Currency*, 802 F.2d 1339, 1345 (11th Cir. 1986). Claimant must, however, "do more than show the existence of possible legitimate sources of cash." *Id.*

■ In this case, the Court finds that, at best, claimant has only shown the *possibility* of an innocent source for the seized money. She claims that portions come from social security benefits to two sons. She did not produce any documentary evidence of those social security benefits, however. Further, the combination of the names of the child purportedly receiving the benefits, Eddie Morris, and the child who was involved with the drug trafficking, Carl Blackmon, which appears as the alternative signatory on the safe deposit box, "Carl Morris," is a striking coincidence which claimant did nothing to explain.

Claimant offered no documentary evidence to support her allegation that she received a settlement from a personal injury claim. In fact, at the hearing, claimant could not remember the name of the attorney who had handled the claim (her attorney supplied it for her), although she could remember the date upon which she received the money, April 1987, nearly a year prior to the forfeiture and nearly three years prior to the hearing. Claimant introduced no corroboratory evidence whatsoever, but rather relied entirely upon her own testimony in which she simply and flatly contradicted most of the testimony of the police officers involved in this case.

Accordingly, this Court finds that claimant has failed to meet her burden and, therefore, enters judgment in favor of the government.

### ORDER

In accordance with the Court's memorandum opinion filed herein this date,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be and it is entered in favor of plaintiff and against defendant and that defendant five thousand seven hundred and forty-three dollars ($5,743.00) be and it is forfeited to the United States of America.