**UNITED STATES of America, Plaintiff,**

v.

**$319,820.00 IN UNITED STATES CURRENCY, Defendant.**

**Civ. A. No. C85–0055.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 7, 1985.

Amy D. Levin, Atlanta, Ga., for plaintiff.

James F. Gilbride & Scott A. Silver, Gilbride, Heller & Brown, P.A., Miami, Fla., Mark J. Kadish, Kadish & Kadish, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This is a forfeiture action pursuant to the Drug Abuse Prevention Act, 21 U.S.C. §§ 801 et seq., in which plaintiff ("the Government") is seeking to have the defendant property condemned and forfeited on the theory that the defendant property was furnished or intended to be furnished in exchange for a controlled substance in violation of the federal drug laws and/or was proceeds traceable to an illegal exchange for a controlled substance and/or was money intended to be used to facilitate a violation of the federal drug laws. See 21 U.S.C. § 881(a)(6). Jurisdiction exists pursuant to 28 U.S.C. §§ 1345 and 1355.

Presently pending are: (1) the motion for summary judgment filed by claimants, the four parties who have filed claims to the defendant property; (2) claimants' motion to compel; (3) plaintiff's motion to compel; (4) plaintiff's motion to strike demand for jury trial; and (5) plaintiff's motion to permit a discovery deposition or, in the alternative, to preclude the testimony of Dr. Lee Hearn.

## FACTS[1]

### A. The seizure

On May 12, 1984, officers of the Atlanta Bureau of Police Services received reports that two Latin males, subsequently identified as Cesar and German Angulo-Neiblas, had been moving around suspiciously on a flight from Miami to Atlanta, exchanging a carry-on bag by leaving it in the restroom of the airplane. The officers approached the Angulo-Neiblas as they deplaned and requested an interview and permission to search their luggage. The Angulo-Neiblas consented to both the interview and the search.

The bag which Cesar Angulo-Neiblas was carrying was found to contain a large amount of United States currency, taped together with masking tape. The currency was later counted as $219,820.00.

Drug Enforcement Administration Agent Paul Markonni was advised of the discovery of this currency and conducted an interview of the Angulo-Neiblas. Agent Markonni asked Cesar Angulo-Neiblas if the currency belonged to him and Cesar replied "no," that the currency belonged to a company for whom he and German were carrying the currency.

---

1. Many of the facts asserted by the claimants are irrelevant to the issues before the court and are thus excluded from this fact summary.

When German Angulo-Neiblas was questioned, he also stated that the money was not his but belonged to the individual listed on a business card found with the currency, Jose Thomas Vargas of Bogota, Colombia, South America.

Neither Cesar or German knew who was going to pick up the money in Seattle, Washington, their destination.

During the course of the interview, a "girdle" of currency was discovered bound around Cesar's mid-section with masking tape. This currency was later counted as $76,000.00. Currency later counted as $14,000.00 was subsequently found in Cesar's boot. All of the currency discovered, with the exception of a few bills, was in $20 denominations and banded by rubber bands.[2]

Based on the interview, the suspicious behavior on the plane, the method by which the currency was being transported, and the fact that the Angulo-Neiblas were wearing ill-fitting, out-of-season clothes, Agent Markonni seized the currency for forfeiture under 21 U.S.C. § 881.

**B.** *Subsequent events*

On June 15, 1984, Jose Thomas Vargas was voluntarily deposed concerning the currency seized. During this deposition, Vargas testified that the currency was intended to be used to purchase emeralds and other gems in Hong Kong and that it was being transported by Cesar and German Angulo-Neiblas from Miami to Seattle for security reasons. Vargas also testified that he was not licensed, incorporated or registered to do business in the United States.

Later, Agent Markonni learned that $630,000.00 in United States currency had been seized at the Los Angeles International Airport on October 18, 1983, under circumstances similar to those in this case and subsequently judicially forfeited under § 881. Vargas had also claimed ownership of that currency.[3]

On November 14, 1984, a narcotics detector dog trained to detect heroin, cocaine, hashish and marijuana "alerted to" the seized currency during a controlled test. Two days later, the currency was transported to a laboratory in Miami, Florida, to be washed for controlled substance residue. Tests performed by a Drug Enforcement Administration chemist on random samples of the currency identified cocaine residue on a portion of the bills.

**DISCUSSION**

**A.** *Claimants' motion for summary judgment*

The claimants to the defendant currency move for summary judgment on the ground that the Government lacked probable cause to seize the defendant currency for judicial forfeiture.

Section 881(b) of Title 21 of the United States Codes provides that:

(b) Any property subject to forfeiture to the United States under [21 U.S.C. §§ 801 *et seq.*] may be seized by the Attorney General upon process issued ... by any district court of the United States having jurisdiction over the property, except that *seizure without such process may be made when—*

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(2) the subject property has been the subject of a prior judgment in favor of the United States in a criminal injunction or forfeiture proceeding under [21 U.S.C. §§ 801 *et seq.*].

(3) the Attorney General has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

---

**2.** According to the court's calculations, the total amount of currency discovered was $309,820.00. It is not clear why the defendant currency is described as $319,820.00.

**3.** The case referred to is apparently United States v. $630,000.00 in U.S. Currency, No. Cv. 83–7988–ERJRX (C.D.Cal.). (*See* plaintiff's response to claimants' Interrogatory Nos. 2 and 6, as quoted by claimants in their August 12, 1985 motion to compel discovery).

(4) the Attorney General has probable cause to believe that the property has been used or is intended to be used in violation of [21 U.S.C. §§ 801 *et seq.*].

21 U.S.C. § 881(b) (emphasis added). Because the seizure at issue was made without process, and because the seizure was not incident to an arrest or search under a warrant, the currency not subject to a prior judgment in favor of the United States, and the currency not dangerous to health or safety, the seizure to be legal must have been supported by probable cause to believe that the currency had been used or was intended to be used in violation of the federal drug laws.

Similarly, the institution of this forfeiture action under § 881(d) must have been supported by probable cause to believe the defendant property is forfeitable. 21 U.S.C. § 881(d).[4]

■ The probable cause necessary to support the seizure of property under § 881(b)(4) and the institution of a forfeiture action under § 881(d) is " 'probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity defined by the statute,' that is, the exchange of a controlled substance." *United States v. Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d 895, 903 (11th Cir. 1985) (emphasis deleted).[5] The belief must

be a reasonable one, "supported by less than prima facie proof, but more than mere suspicion." *Id. See also United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1426 (11th Cir.1983); *United States v. One 1978 Chevrolet Impala,* 614 F.2d 983, 984 (5th Cir.1980).[6]

■ The existence of probable cause to support a forfeiture is a matter of law. *Four Million, Two Hundred Fifty-Five Thousand, supra,* 762 F.2d at 903 n. 17.

■ Circumstantial evidence and inferences therefrom can suffice to support a finding of probable cause. *Id.* at 904; *United States v. $364,960.00 in United States Currency,* 661 F.2d 319, 324–25 (5th Cir.1981) (Unit B). The government need not produce evidence of a particular narcotics transaction to establish probable cause. *Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 904.

■ Probable cause " 'must be judged not with clinical detachment but with a common sense view of the realities of normal life.' " *Id., quoting Wilson v. Attaway,* 757 F.2d 1227 (11th Cir.1985). The court can take into account "common experience considerations," such as the fact that the property seized is connected to a known center for drug-smuggling and money-laundering. *Id.*[7]

---

**4.** Section 881(d) provides, in pertinent part, that:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof....

The customs laws in turn provide that:

> In all suits ... brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized ..., where the property is claimed by any person, the burden of proof shall lie upon such claimant ...: *Provided,* that probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....

19 U.S.C. § 1615 (Emphasis in original).

**5.** The "substantial connection" requirement appears in the legislative history of § 881. *See*

*Four Million, Two Hundred Fifty-Five Thousand,* 762 F.2d at 902 n. 14.

**6.** Just six months before it rendered *Four Million, Two Hundred Fifty-Five Thousand,* the Eleventh Circuit stated that in order to establish probable cause for forfeiture under 49 U.S.C. § 782 and 19 U.S.C. § 1595(a), the government has to show a reasonable ground for belief *supported by prima facie proof. United States v. One 1972 44' Striker, Bonanza,* 753 F.2d 867, 868 (11th Cir.1985). By not reciting this higher standard in *Four Million Two Hundred Fifty-Five Thousand,* the court apparently does not adopt it in the context of § 881 forfeitures.

**7.** *Compare United States v. Saperstein,* 723 F.2d 1221, 1228 (6th Cir.1983); *United States v. Andrews,* 600 F.2d 563, 567 (6th Cir.1979) ("travel from Los Angeles cannot be regarded as in any way suspicious. Los Angeles may indeed be a major narcotics distribution center, but the

However, the nationality of the couriers and the amount of money involved cannot *alone* give rise to a finding of probable cause; it is the totality of the circumstances which gives rise to the finding of probable cause. *Id.* at 903 n. 18. *Cf. United States v. $364,960.00 in United States Currency, supra,* 661 F.2d at 324 (the sheer quantity of currency seized may support an inference that the currency is connected with illegal narcotics trafficking where the currency is found with narcotics, narcotics paraphernalia—including a scale and glassine bags—and guns).

Since the standard for probable cause in § 881 forfeiture cases is similar to that used in search and seizure cases, *see United States v. One 56-Foot Motor Yacht,* 702 F.2d 1276, 1281 (9th Cir.1983); *United States v. One 1974 Porsche 911–S,* 682 F.2d 283, 285 (1st Cir.1982); *United States v. One 1975 Mercedes, 280S,* 590 F.2d 196, 199 (6th Cir.1978); *Application of Kingsley,* 614 F.Supp. 219, 224 (D.Mass.1985), this court must be mindful of the principles developed in that context. One such principle is that courts should be especially cautious when the evidence that is alleged to establish probable cause is entirely consistent with innocent behavior. *See Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *Moya v. United States,* 761 F.2d 322, 325 (7th Cir.1985); *United States v. Saperstein,* 723 F.2d 1221, 1228–29 (6th Cir. 1983). *See also Florida v. Royer,* 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983).

■ The Government asserts that the following facts created probable cause to support the seizure of the defendant currency:

(1) the behavior of the Angulo-Neiblas on the flight from Miami to Atlanta;

(2) the origin of the Angulo-Neiblas' flight, a city known to be a major cocaine source;

(3) the large amount of currency carried;

(4) the manner in which the currency was carried—part in a carry-on bag, part taped around Cesar's mid-section, and part hidden in Cesar's boot;

(5) the method by which most of the currency was banded together—with rubber bands and masking tape rather than bank wrappers;

(6) the small denomination of the bills;

(7) the Angulo-Neiblas' ignorance of the person who was going to pickup the currency in Seattle;

(8) the purported owner of the currency is a citizen of Colombia—a country known to be a significant source of cocaine and marijuana; and

(9) the Angulo-Neiblas were wearing ill-fitting, out-of-season clothes.[8]

The court agrees with the Government that based on all these considerations, the DEA agent had probable cause to believe that the currency carried by the Angulo-Neiblas was substantially connected to a narcotics exchange. The circumstances involved support more than a mere suspicion or "hunch" of such a connection. Of particular significance is the manner in which the currency was carried, the method by which the currency was banded together, the denomination of the bills, and the ties to Colombia and Miami.

The circumstances are not equally consistent with innocent behavior, contrary to what claimants argue. The court feels confident in assuming that innocent persons do not tend to carry large amounts of cash in the manner described.

probability that any given airplane passenger from that city is a drug courier is infinitesimally small. Such a flimsy factor should not be allowed to justify—or help justify—the stopping of travelers from the nation's third largest city...").

8. The Government also contends that the fact that the Angulo-Neiblas were of Colombian origin supports the finding of probable cause. The court, however, cannot determine from the evidence whether this fact was known at the time of seizure so it does not consider this fact in ruling on claimants' motion for summary judgment.

That no narcotics or narcotics paraphernalia was being carried by the Angulo-Neiblas does not defeat the existence of the requisite probable cause when considering the totality of the circumstances. *See, e.g., Four Million, Two Hundred Fifty-Five Thousand, supra,* 762 F.2d at 902–04.

Having found probable cause to support the seizure of the defendant currency, the court DENIES the claimants' motion for summary judgment.[9]

B. *Claimants' motion to compel*

After carefully considering claimants' motion to compel, which seeks an order compelling the Government to answer ten interrogatory questions and to produce various documents requested, the court DENIES this motion for the reasons adequately set forth by the Government in its response to this motion.

C. *Plaintiff's motion to compel (as amended August 23, 1985)*

Plaintiff's motion to compel being unopposed, the court GRANTS this motion.

D. *Plaintiff's motion to strike claimants' demand for jury trial*

 The Government moves to strike claimants' demand for a jury trial on the ground that such demand was not made within ten days after service of the last-filed pleading as required by Fed.R.Civ.P. 38(b). The last filed Answer was filed on February 4, 1985, and claimants' demand for a jury trial was not made until March 15, 1985, more than 30 days later.

Claimants oppose the motion to strike, arguing that the ten-day period of Rule 38(b) did not begin to run until March 7, 1985, when they filed their response to plaintiff's motions to strike claimants'

claims and answers, or on April 10, 1985, when the court granted claimants' motion to accept their claims as timely filed. In the event the court deems the demand for a jury trial untimely, claimants' request relief from their failure to file a timely demand since there would be no prejudice to the Government to have a jury trial and because they were under the "impression" that their demand was timely.

The court GRANTS the Government's motion to strike. The court rejects claimants' position that their jury demand was timely as well as their alternative position that they should be allowed a jury trial despite the tardiness of their Rule 38(b) demand. There is no room for disagreement that the last pleading in this action was filed on February 4, 1985, and that the ten-day filing period under Rule 38(b) began running on this date. Claimants' response to the Government's motions to strike claimants' claims and answers was not a "pleading", *cf. United States v. Anderson,* 584 F.2d 369, 372 (10th Cir.1978) (government's motion to dismiss counterclaim held not to be a pleading for purposes of Rule 38(b)), nor was this court's Order of April 10, 1985 a "pleading". Claimants' counsel's misunderstanding of the meaning of "pleading" does not merit excusing their failure to comply with Rule 38(b), especially since the Government has proceeded with the (correct) assumption that claimants had waived their right to a trial by jury by not filing a timely demand.

E. *Plaintiff's motion to permit discovery deposition or, in the alternative, to preclude the testimony of Dr. Lee Hearn*

As claimants have no objection to the Government taking the discovery deposi-

---

**9.** This ruling renders unnecessary disposition of the question of whether a seizure without probable cause results in an automatic dismissal of the forfeiture proceeding (as argued by claimants) or merely results in the exclusion from the forfeiture proceeding of evidence obtained as a result of the improper seizure (as argued by the Government). *See Application of Kingsley,* 614 F.Supp. 219, 224 (D.Mass.1985) (raising, but not answering, this issue and suggesting additional alternatives). *See also United States v. Monkey,*

725 F.2d 1007, 1011 (5th Cir.1984) (adopting approach urged by the Government); *United States v. One 1977 Mercedes Benz, 450 SEL,* 708 F.2d 444, 448 (9th Cir.1983), *cert. denied sub nom. Webb v. United States,* 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984) (same); *United States v. Eighty-Eight Thousand, Five Hundred Dollars,* 671 F.2d 293, 297–98 (8th Cir.1982) (same); *United States v. One 1975 Pontiac Lemans,* 621 F.2d 444, 450–51 (1st Cir.1980) (same).

tion of Dr. Lee Hearn "upon reasonable notice and in Dade County, Florida, the place of Dr. Hearn's residence," the court GRANTS plaintiff's motion to permit the taking of Dr. Hearn's discovery deposition on the terms set by claimants.

**CONCLUSION**

In sum, the court:

(1) DENIES claimants' motion for summary judgment;

(2) DENIES claimants' motion to compel;

(3) GRANTS plaintiff's motion to compel;

(4) GRANTS plaintiff's motion to strike demand for jury trial; and

(5) GRANTS plaintiff's motion to permit discovery deposition (with qualifications described above).