**UNITED STATES of America, Plaintiff–Appellant,**

v.

**ONE 1980 BERTRAM 58′ MOTOR YACHT, KNOWN AS THE M/V MO-LOGA, SERIAL NO. 138M80587–80, VIN: BERRO–138M80B, together with its Furniture, Fixtures, Engines, Apparel, Tackle & Equipment, Defendant–Appellee.**

No. 87–5738.

United States Court of Appeals, Eleventh Circuit.

June 30, 1989.

** Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation.

it on its complaint seeking the forfeiture of the defendant *in rem,* One 1980 Bertram 58' Motor Yacht known as the M/V Mologa (the "Mologa"), under 21 U.S.C.A. § 881(a)(4) (1981 & Supp.1989). Answering the appeal is claimant Vene Investments Corporation ("Vene Investments") which claims to be the owner of the Mologa. The district court, after a bench trial, concluded that the Government had probable cause to institute the forfeiture proceedings, but that Vene Investments had proven by a preponderance of the evidence that the Mologa was not subject to forfeiture. The district court also opined, however, that Vene Investments was not an "innocent owner" of the vessel, which conclusion is challenged by Vene Investments on this appeal. We reverse.

## I. FACTS

Most of the salient facts are undisputed, and establish the following: Vene Investments is incorporated in Florida and Delaware, and is engaged in the buying and selling of yachts in the United States. Vene Investments is also the representative in the United States of Yacht Center, S.A., a Venezuelan corporation that sells recreational and fishing vessels in Venezuela. Luis Pru is the president of Vene Investments and vice-president of Yacht Center. Pru lived in Venezuela but travelled extensively to the United States to conduct business on behalf of Yacht Center.

In 1984, the original owner of the Mologa approached Pru about transporting the Mologa from Venezuela to the United States and having Pru act as a salesbroker of the vessel. Upon its arrival in the United States, the Mologa was berthed at Richard Bertram & Co. Yachts in Miami. In February 1985, the vessel was moved at Pru's request to Miami River Yacht Repair, Inc. for repairs and maintenance. Pru hired Roberto Damas to move the Mologa. The duration of the Mologa's stay at Miami River Yacht Repair was a contested issue

Robert A. Rosenberg, Linda C. Hertz, Sonia E. O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Robert I. Targ, Miami, Fla., for defendant-appellee.

Before VANCE and COX, Circuit Judges, and KING *, Chief District Judge.

COX, Circuit Judge.

The United States of America (the "Government") appeals a judgment against

---

* Honorable James Lawrence King, Chief U.S. District Judge for the Southern District of Florida, sitting by designation.

of fact at trial. A witness for the Government testified that a vessel which he equivocally identified as the Mologa was used to transport marijuana sometime in late March 1985. Damas testified, on the other hand, that the Mologa was in dry dock under his supervision until the end of March. Apparently discrediting the testimony of the Government's witness, the district court found that the Mologa was in dry dock at the time of the alleged drug run in March. Our review of the record indicates that this finding is not clearly erroneous, see United States v. Eighty–Eight Thousand, Five Hundred Dollars, 671 F.2d 293, 296 (8th Cir.1982); Fed.R.Civ. P. 52(a), and we do not disturb it.

While the Mologa was berthed at Miami River Yacht Repair, Pru closed the purchase of the vessel from its original owner. Pru then had the vessel moved to Marina Biscayne at the beginning of April 1985, and began advertising the Mologa for resale. In mid-May 1985, Pru, on behalf of Vene Investments, entered into a contract to sell the Mologa to one known to Pru as "Jose Rene." Rene actually was Rene Rodriguez, one of several defendants later prosecuted for drug trafficking.[1] Pru received from Rodriguez a $50,000 cash deposit for the Mologa, and agreed to make the sale contingent upon a satisfactory survey and sea trial of the vessel.

Pru returned to Venezuela in mid-June 1985. While in Venezuela, he was contacted by his daughter who informed him that Rodriguez wanted to conduct the survey and sea trial. Pru authorized Rodriguez to remove the vessel from Marina Biscayne to Sunny Isles Marina where Rodriguez kept other boats involved in his trafficking operation. Rodriguez told one of his captains that the Mologa soon would replace another of his vessels in the trafficking operation because a larger boat was needed. The two agreed, however, that alterations to the Mologa would be necessary to optimize its drug-carrying capability. Discussions between Rodriguez and the captain concerning the proposed alterations occurred both on and off the Mologa, and, on at least one occasion, the two men boarded the Mologa with a copy of the vessel's construction blueprints and discussed possible modifications to the vessel to accommodate the transportation of controlled substances. Before any of the plans could be executed, however, and before the Mologa was ever used to transport drugs, Rodriguez and his cohorts were arrested and the vessel was seized by federal agents.

## II. DISCUSSION

In its oral findings of fact and conclusions of law, the district court concluded, without significant elaboration, that "the United States had probable cause to bring this forfeiture action,"[2] which conclusion is not challenged by Vene Investments by way of cross-appeal. It then concluded that Vene Investments had established by a preponderance of the evidence that the Mologa was not subject to forfeiture because it was not used or intended for use to transport or facilitate in any manner the transportation of controlled substances. Finally, the district court opined, "in the interest of a complete ruling," that Vene Investments "failed to establish that he did those things which reasonably could have been done by a prudent person to avoid having the vessel illicitly used," i.e., that Vene Investments failed to prove its defense of innocent ownership. The Government challenges the conclusion that the Mologa was not subject to forfeiture, and Vene Investments challenges the conclusion that it failed to prove its defense of innocent ownership. We address those challenges seriatim.

---

1. The record does not establish whether Pru ever learned the true identity of Rodriguez.

2. The number of published opinions reciting the nature of the burdens of production and proof in section 881 cases is legion, see, e.g., United States v. A Single Family Residence, 803 F.2d 625, 628–29 (11th Cir.1986); United States v. One 1979 Porsche Coupe, 709 F.2d 1424, 1426–27 (11th Cir.1983), and since the parties do not challenge the district court's allocation of the burdens in this case, we are not inclined to further swell the ranks.

A. *Was the Mologa Subject to Forfeiture?*

■ Section 881(a)(4) reads, in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [contraband], except that—

. . . .

(c) no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner.

The Government argues that the Mologa is subject to forfeiture because it was used on one occasion to transport marijuana, it was the situs of discussions concerning "current and future drug deals," and steps were taken to plan the modification of the Mologa to accommodate the transportation of controlled substances. The district court rejected the testimony of the lone Government witness who testified that the Mologa was involved in the actual transportation of illegal drugs, and, as we have stated, the district court's factual finding in that respect is not clearly erroneous. We therefore reject the Government's argument that the Mologa is subject to forfeiture because it was used to transport illegal drugs. We also reject the argument that the Mologa is subject to forfeiture because it was the location of discussions concerning present and future drug deals. The Government cites no authority for the

proposition that general discussions aboard a vessel about unspecified drug transactions constitute "facilitation" of prohibited activity within the meaning of section 881(a)(4), and our research has not discovered any such authority.[3]

■ We agree, however, that the Mologa was "intended for use" to transport controlled substances and that it is subject to forfeiture on that basis. The district court, in reaching its conclusion that the vessel could not be forfeited under the "intended for use" language of section 881(a)(4), reasoned that "what a person contemplates doing in the future absent any further activity does not . . . authorize forfeiture of a vessel. . . ." The district court's finding that there was no "further activity" evidencing Rodriguez' intent to use the Mologa to transport drugs ignores uncontradicted and unchallenged testimony in the record that initial steps were taken to modify the Mologa to accommodate the purpose for which the vessel was intended. The testimony of one of Rodriguez' captains was that he went aboard the Mologa with Rodriguez, carrying the vessel's construction plans, and discussed the alterations to the boat's construction which would be needed to accommodate the transportation of drugs. We hold that this activity, coupled with Rodriguez' stated intent to use the Mologa to transport controlled substances, subjects the Mologa to forfeiture under section 881(a)(4) because it was "intended for use" in the transportation of illegal drugs. In reaching this conclusion, we are mindful that the minimal amount of action taken in this case to effect the smuggler's criminal intentions is near the outer parameter of the scope of the "intended for use" language of section 881(a)(4). We need not define that parameter at this time, however, because we are satisfied that it has not been exceeded by our holding. It is the state of mind of the criminal with respect to the property sought to be forfeited which is determinative, not whether the property is actually used to execute the

**3.** A vehicle "facilitates" illegal activity under section 881 if it "makes easy or less difficult" the activity. *United States v. One 1971 Chevrolet Corvette,* 496 F.2d 210, 212 (5th Cir.1974). The "discussions" which the Government argues are a basis for forfeiture did not pertain to any specific transaction in which the Mologa was or would have been involved.

criminal intentions, *see, e.g., United States v. 124 East North Avenue, Lake Forest, Illinois,* 651 F.Supp. 1350 (N.D.Ill.1987) (house forfeitable as the intended site of a narcotics transaction), or whether it is even possible to consummate those intentions. *See, e.g., United States v. One 1980 Cadillac Eldorado,* 705 F.2d 862, 863 (6th Cir. 1983) (car forfeitable because it was used to facilitate sham cocaine deal: "We agree with the district judge that intent is the determining factor, not the actual presence of a controlled substance."). Significantly, we note that the purpose of the forfeiture statute, which is "to prevent the flow of narcotics by depriving narcotics peddlers of the 'operating tools' of their trade," *United States v. One 1972 Datsun,* 378 F.Supp. 1200, 1205 (D.N.H.1974), is directly served by allowing forfeiture in this case. *Cf. United States v. One 1979 Datsun 280ZX,* 720 F.2d 543, 544 (8th Cir.1983) (disallowing forfeiture of automobile where "the remedial goals of the forfeiture statutes would not be directly promoted...."). We are satisfied, therefore, that our holding properly construes that portion of section 881 requiring the forfeiture of conveyances "intended for use" to transport controlled substances.

### B. Was Vene Investments an Innocent Owner?

As we have stated, once the Government establishes probable cause that property is subject to forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture, or that another defense to forfeiture applies. We already have determined that Vene Investments failed to prove by a preponderance of the evidence that the Mologa was not subject to forfeiture. We now address Vene Investments' assertion that its innocent ownership of the Mologa is a defense to the forfeiture sought by the Government.

▆▆▆ To prevail on a defense of innocent ownership, a claimant must prove not

only that it was uninvolved in and unaware of the activity upon which forfeiture is sought, but also that it did everything that reasonably could be expected of it to prevent the activity. *United States v. One 1982 28' International Vessel,* 741 F.2d 1319 at 1322 (11th Cir.1984) (citing *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 689, 94 S.Ct. 2080, 2094, 40 L.Ed. 2d 452 (1974)). Vene Investments has not discharged its burden in this case. Pru advertised the Mologa for sale in Miami, a known center for drug-smuggling activities,[4] and was approached by a purchaser who offered a $50,000 cash deposit in order to take the vessel out for a survey and sea trial. Despite the obviously suspect nature of Rodriguez' proposal, Vene Investments introduced no evidence that Pru asked Rodriguez for any identification, that he inquired of local law enforcement officials regarding Rodriguez, or that he inquired concerning Rodriguez' reputation in the community. In a case such as this one, a claimant must introduce evidence that such precautions were taken to prevail on a defense of innocent ownership. *See, e.g., United States v. One Rockwell International Commander 690 C/840,* 594 F.Supp. 133, 139 (D.N.D.1984); *United States v. One 1980 Stapleton Pleasure Vessel,* 575 F.Supp. 473, 478 (S.D.Fla.1983). *Accord United States v. 1966 Beechcraft Aircraft Model King Air A90,* 777 F.2d 947, 952 (4th Cir.1985) (operator of airplane facility located in an area in which drug-trafficking flourishes not "innocent owner" of aircraft which he allowed to be used by someone without any inquiry as to where aircraft was being flown, what was being carried, when it was to be returned, or purpose of borrowing plane). In short, Pru did not take even the most minimal precautions to insure that Rodriguez was not purchasing the Mologa for the purpose of using it to transport controlled substances. *See One 1982 28' International Vessel,* 741 F.2d at 1322 (claimant cannot prevail

---

**4.** We previously have stated that it is not improper for a district court to take into account "the fact that Miami has become a known center for drug-smuggling and money-laundering."

*United States v. Four Million Two–Hundred and Fifty–Five Thousand Dollars,* 762 F.2d 895, 904 (11th Cir.1985). *See also United States v. $319,-820.00,* 620 F.Supp. 1474, 1477 (N.D.Ga.1985).

on defense of innocent ownership where he introduces no evidence of steps taken to prevent proscribed use of vessel). We do not suggest that Pru should have been able to prevent Rodriguez from planning modifications to the Mologa once Rodriguez had taken possession of the vessel. Nevertheless, if Pru were a truly "innocent" owner as the jurisprudence has defined that term, he would have been suspicious of the transaction proposed by Rodriguez, and would have made those inquiries necessary to insure himself that Rodriguez' intentions were legitimate prior to allowing Rodriguez to take possession of the vessel. Because Vene Investments introduced no evidence that Pru made such inquiries—in other words, that he did everything that a truly innocent owner reasonably could be expected to do to insure that his vessel was not to be used illegally—we hold that Vene Investments has not proven its defense of innocent ownership by a preponderance of the evidence.

For the reasons stated in this opinion, the judgment of the district court is REVERSED, and the case is REMANDED to the district court with instructions to enter a judgment in favor of the United States.

VANCE, Circuit Judge, dissenting.

I respectfully dissent. Forfeitures are not favored in the law. *United States v. One 1936 Model Ford V–8 De Luxe Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 864, 83 L.Ed. 1249 (1939). Bearing this in mind, I cannot agree with the majority that Congress intended for the forfeiture provisions of the Drug Abuse Prevention and Control Act to be interpreted so broadly as to permit forfeiture of the property of one who has committed no crime based on the mere intent of another to use it to transport controlled substances at some future time. In my view more tangible involvement in a criminal act is required to render a property subject to forfeiture. *Cf.* H.R.Rep. No. 95–1193, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Admin. News 9496, 9522 (discussing provision of Act authorizing forfeiture of proceeds of illegal drug transactions) ("Due to the penal nature of forfeiture statutes, it is the intent of these provisions that property would be forfeited only if there is a substantial connection between the property and the underlying criminal activity which the statute seeks to prevent."); *United States v. United States Coin & Currency,* 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971) (forfeiture of money in violation of Internal Revenue laws) ("When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise.").