UNITED STATES of America, Plaintiff,

v.

SONNY COOK MOTORS, a Sole Proprietorship, and all Assets Thereof, Including, but not Limited to all Bank Accounts Inventory, Motor Vehicles, Equipment, and Certain Real Property Located at 311–313 East Battle Street, Talladega, Alabama, Together with all Improvements, Fixtures, and Appurtenances Thereon, Defendants.

Civ. A. No. 92–AR–2588–E.

United States District Court,
N.D. Alabama, E.D.

Jan. 22, 1993.

Jack W. Selden, James D. Ingram, U.S. Attorney's Office, Birmingham, AL, for plaintiff.

Donald W. Stewart, Stewart & Smith, Anniston, AL, for defendants.

L. Drew Redden, Redden Mills & Clark, Birmingham, AL, James S. Hubbard, Anniston, AL, for claimant Clarence Cook, III.

Dwight K. Rice, Rice & Rice, Oxford, AL, for claimant Independent Bank of Oxford.

Harvey B. Campbell, Jr., Campbell & Campbell, Talladega, AL, for claimants Ann and Randy Bishop.

Ann Bishop, pro se.

Randy Bishop, pro se.

Steven D. Adcock, Talladega, AL, for claimant Teresa Bussie.

### MEMORANDUM OPINION

ACKER, District Judge.

By an order entered on December 7, 1992, this court expressly set an evidentiary hearing on December 21, 1992, to consider the "motion," the "claim" and the "answer" of Clarence C. Cook, Jr. ("Cook"), who is one of the possible claimants named in the above-entitled complaint for forfeiture *in rem* pursuant to 18 U.S.C. § 981(a)(1)(A). Cook is the only claimant who claims to hold fee simple title to the real property sought to be forfeited.

On December 21, 1992, for good cause shown, this court entered an order by which "the motion, *claim* and answer of Clarence C. Cook, Jr., are reset for evidentiary hearing at 9:30 A.M., Thursday, December 31, 1992." (emphasis supplied).

Before the December 31, 1992, hearing, the court granted an *ex parte* motion of the United States for leave to disclose grand jury proceedings covering "material needed to commence and proceed with the anticipated judicial forfeiture proceeding." The court felt compelled to give the United States access to all possible evidentiary material needed for its defense of Cook's claim. Before the hearing began on December 31, 1992, the court made clear the parameters of the inquiry and that it would include a hearing on Cook's claim. The United States made no motion for a continuance and interposed no objection to the proposed procedure.

At the appointed hour on December 31, 1992, when the issues were called in sequence for hearing, the parties first offered arguments to supplement their memorandum briefs on the question presented by Cook's motion for a judgment on the pleadings, designed to test the legal sufficiency of the complaint for the forfeiture of Cook's real property. Serious constitutional questions were thoroughly explored. The United States next presented basically the same hearsay evidence in support of "probable cause" that it had alleged in its verified complaint, except that the government's case agent was cross-examined and furnished a few additional, possibly pertinent, facts. The United States had facially reliable information that three automobiles were sold for cash, each for a price in excess of $10,000, by Clarence C. ("Sonny") Cook, III, the son of Cook, to an undercover agent who had allegedly told Sonny that the cash was drug money. Sonny did not report any of the transactions to the government. Two of the sales were consummated at locations other than the premises of Sonny Cook Motors, which, as correctly alleged by the United States in the style of its complaint, is a "sole proprietorship" owned only by Sonny, a fact which found no dispute in the evidence and which the United States is estopped from denying. Sonny Cook Motors, a used car dealership, is admittedly situated on the real property here sought to be forfeited *in rem* and owned by Cook, Sonny's father.

The court took Cook's motion for judgment on the pleadings under advisement and also took under advisement the question of whether "probable cause" existed. The court then called upon Cook to present any evidence he had in support of his claim which

alleged that he had no knowledge of any drug money laundering or any other wrongdoing by Sonny as alleged in the complaint and that he did not consent to any wrongdoing in connection with his real property or otherwise.

### Findings of Fact Relevant to Cook's Claim

Cook bought his real property in 1983, long before any of the events involved in this forfeiture proceeding unfolded. Although it was and is obvious to all concerned that there is an ongoing criminal investigation of Sonny Cook Motors, neither the United States nor Cook requested a continuance of this proceeding as it related to the title to Cook's real property. Although Cook originally bought the property by one deed from one owner, the legal descriptions in his deed were divided into the same three parcels (I, II, and III) used in the verified complaint by which this procedure was initiated. The United States obviously copied its legal descriptions from the very deed by which Cook purchased the property. When Cook acquired the land, which fronts on East Battle Street in the City of Talladega, Alabama, Parcel I had a barbecue restaurant on it. It still does. The building and parking lot for the restaurant on Parcel I can easily be delineated and separated from Sonny's used car business which was and is established on Parcels II and III. There was not the slightest indication in the evidence that any illegal transaction ever took place upon the premises of, or "involved," the barbecue restaurant now operated by claimants, Randy Bishop and Ann Bishop, d/b/a Buddy's Barbecue. The Bishops are Cook's lessees, whose separate claim of an innocent possessory interest has not yet been set for hearing. Neither has the separate claim of the mortgagee bank which made the purchase money loan to Cook been set for hearing.

Cook had no ownership or interest whatsoever in any of the three cars allegedly sold by Sonny to the undercover agent. Cook was unaware of these particular sales until this forfeiture complaint was filed.

Only one of the three cash auto sales actually took place on Parcels II and III, the premises upon which Sonny Cook Motors is located. Cook never talked to the undercover agent or met him. However, after Sonny told his father about a man wanting to buy cars for cash, Cook became suspicious. Although he was personally unaware of any federal reporting requirement for cash sales over $10,000.00 (ignorance of the law is, of course, no excuse), Cook had never during his 43 years in the older used car business sold a used car for cash over $10,000.00. He called the FBI, the Sheriff of Talladega County, and the District Attorney of Talladega County, to express his doubts about the prospective cash buyer and to furnish the prospective buyer's license tag number. The next thing he knew, the seizure took place. Oftentimes, but not always, parents know what their children are doing. Here, Cook is fortunate in that *he did not know, and therefore could not consent to, what his son was doing.* Without judging whether Sonny is himself guilty of the criminal conduct here charged, a matter first for a grand jury and ultimately for a jury under a much higher standard of proof than here, this court finds no credible evidence that Cook knew of any drug money laundering sale by Sonny, who apparently very carefully hid from his father any illegal transactions. It is unnecessary to repeat the obvious, but the court nevertheless repeats it for emphasis. *A person cannot consent to an event of which he has no knowledge.*

After Cook testified under penalty of perjury and was cross-examined by the United States, Cook rested his case-in-chief, whereupon the court called upon the United States to present its case in rebuttal of Cook's claim, at which time the United States said it had nothing to offer except what it had already offered in support of its "probable cause" case, and that it had not completed its discovery on the subject of Cook's innocence. Expressing mild shock, the court got the impression that the United States was implicitly asking for a continuance in the middle of trial. Apparently counsel for Cook got the same impression, because he quickly pointed out that it would have been foolish for Cook to take the stand in support of his claim, to subject himself to cross-examination, and

thereby to waive his Fifth Amendment privilege, only to find out that all he had been doing was to participate inadvertently in the opening phase of discovery by the United States toward some future, final inquiry into whether he can recover possession of real property upon which he is, in the meantime, obligated to make mortgage payments and to pay ad valorem taxes and insurance premiums. As already said, this court in its opening remarks on December 31, 1992, made quite clear to both parties the intended scope of the inquiry, and the United States never said, "Wait a minute," or anything to indicate a reluctance to face the moment of truth on Cook's claim.

### Conclusions of Law

■ Cook made several arguments to support his contention that 18 U.S.C. § 981(a)(1)(A) is unconstitutional as the United States would here apply it to his real property. Although there is a growing body of judicial literature critical of the overbroad and overbearing scope of the legal fiction used in *in rem* forfeiture proceedings and of the relatively few "due process" guarantees statutorily attached to those procedures, because the constitutional questions can here be avoided for the reasons which will hereinafter appear, this court will tiptoe around the constitutional questions raised by Cook. It is a cardinal principle that needs no citation of authority that constitutional questions are to be avoided when possible.

■ Based upon the evidence presented by the United States, there was "probable cause" to believe that *all* of Cook's property (Parcels I, II and III) was subject to forfeiture as having been used indirectly to facilitate a drug money laundering operation by Sonny. The court is unimpressed, if intrigued, by the argument that tax money and not drug money was used to purchase these three automobiles. The forfeiture statute here involved is 18 U.S.C. § 981, which subjects all contiguous real property, no matter how large, to forfeiture if it is "involved in a transaction or attempted transaction" in violation of any of the drug laundering statutes. Under this statute, the United States can add ten thousand contiguous acres to its land inventory if one acre of it is implicated in drug trafficking. "Probable cause" in forfeiture cases simply means a reasonable ground for a belief of guilt supported by less than *prima facie* proof but more than mere suspicion. Using this definition, "probable cause" existed to believe that all of Cook's property was subject to forfeiture. Thus, the United States met the "probable cause" threshold, turning over to Cook the burden of proving his "innocence" if he wanted to save his property.

If this court were writing on a clean slate, it would draw a line between the forfeiture of contiguous parcels that can easily be distinguished by their differing uses and their legal descriptions when one or more of the contiguous parcels clearly has or have not been criminally implicated, particularly where, as here, Parcel I is leased to Buddy's Barbecue, which has been shown to have no connection whatsoever to any alleged money laundering operation. By saying this, the court does not mean to prejudice or to prejudge the claim of the Bishops as proprietors and lessees of Buddy's Barbecue. Their claim has not yet been heard. Neither has the claim of the bank as mortgagee-lender, which for aught yet appearing, may have knowingly financed Sonny's nefarious scheme and been far from innocent. Its claim must also await an independent evidentiary hearing.

■ Because Cook has proven to the complete satisfaction of this court that he was "uninvolved in and unaware of" his son's drug money laundering activities, he has succeeded in his innocence defense. *See United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884, 888 (11th Cir.1989). If Cook had the obligation, either as a parent or as a landlord, to do everything reasonably necessary to assure that his real property was not used illegally by his son and tenant, he also met that obligation, that is, unless the forfeiture laws are to be stretched beyond their logical limits and are construed to require an owner to *guarantee* that his real property will not be put to any illegal use, direct or indirect. This court has expressly refused to go so far. *See United States v. That Certain Real Property,* 798 F.Supp. 1540 (N.D.Ala.

1992). Cook did not know that he was blowing the whistle on his own son. It is unnecessary to decide whether he would have gone to the authorities if he had known.

This court has also refused to grant the United States unlimited time within which to prepare to defend a claim of innocence by the person who held the legal title to real property prior to an attempted forfeiture. *See United States v. That Certain Real Property,* 798 F.Supp. 1540 (N.D.Ala.1992). In the instant case this court cannot conceive of how the United States could have believed that Cook's claim of innocence was not going to be tried to a conclusion on December 31, 1992. The fact that it was unprepared, if it was unprepared, cannot be laid at the feet of Cook or of this court.

While the United States could rely, as it did, upon hearsay for its proof of "probable cause," it could not rely for the rebuttal of credible, cross-examined, sworn testimony by Cook of his innocence upon that same hearsay or upon any inference from that hearsay, or on some sort of vicarious or constructive knowledge by which a son's violations of law are attributable to his father. The United States has never even attempted in this case such an argument akin to liability by *respondeat superior* on the basis of apparent authority. This evidentiary rule is capsuled in *U.S. v. All Monies ($477,048.62) Acc. No. 90-3617-3,* 754 F.Supp. 1467, 1478 (D.Haw.1991), as follows:

> [A]ny hearsay evidence offered by the government may not be used to decide the innocent owner issue.

To conclude, this court, while attempting to maintain its ataraxia, is flummoxed by a governmental jihad so intense that the prosecution occasionally fails to do its homework, apparently believing that the courts will hand out encomiums to those who are fighting the battle against drugs, no matter how heavy their hands or how thin their evidence. The "penumbrella" of drug enforcement is simply not broad enough, with all of its possible emanations, to cover the taking of private property in the face of the uncontradicted testimony of an innocent owner.