UNITED STATES of America, Plaintiff,

v.

ONE PARCEL OF REAL PROPERTY, located at 12110 S.W. 92nd Street, Miami, Florida, together with all improvements, fixtures and appurtenances thereto, and thereon, Defendant.

No. 92–0365–CIV.

United States District Court, S.D. Florida.

March 9, 1993.

David A. Brener, Miami, FL, for defendant.

Barbara Jean Throne, Asst. U.S. Atty., Miami, FL, for plaintiff.

### *MEMORANDUM OPINION AND ORDER*

HIGHSMITH, District Judge.

THIS CAUSE came before the Court for non-jury trial on March 3 and 4, 1993. Plaintiff United States of America ("United States") brought this action for the forfeiture of Defendant One Parcel of Real Property Located at 12110 S.W. 92nd Street, pursuant to 21 U.S.C.A. § 881(a)(7) (West 1992). This Court has jurisdiction over the action, pursuant to 28 U.S.C.A. §§ 1345, 1355, and 2461 (West 1976 and Supp.1991).

### *PROCEDURAL BACKGROUND*

On February 13, 1992, the United States filed a complaint for forfeiture in rem against the defendant real estate. (D.E. # 1). As grounds for forfeiture, the United States alleged that Miguel Gort used the property as a staging and communication site for coordinating a cocaine smuggling operation. (D.E. # 1 at ¶ 8). On February 28, 1992, Claimant Zoila Gort, the mother of Miguel Gort, filed a claim to the defendant real estate. Thereafter, on March 20, 1992, she filed an answer as title owner of the defendant property. (D.E. ## 5, 6, 9). In her pleadings, Zoila Gort asserted that she "had no actual knowledge nor consented to any unlawful activity." (D.E. # 9 at ¶ 1).

### *FINDINGS OF FACT*

At the trial, the Court received documentary and testimonial evidence. Based on this evidence, the Court makes the following findings of fact:

1. On October 11, 1978, Zoila Gort and her sister, Maria J. Rodriguez, purchased the defendant property. The property was purchased for $79,500.00, and each sister paid a down payment of $12,500.00. Zoila Gort had previously saved the money she used for the down payment by working for many years in a sewing factory in New York. She bought

the house so that she could live with her children after retirement.

2. On July 3, 1980, Maria J. Rodriguez conveyed her interest in the property to Zoila Gort.

3. At the time that the property was purchased, Zoila Gort was living in New York. Therefore, she allowed her son, Miguel Gort, and his family to live on the property. Miguel Gort paid the monthly $425.00 mortgage, and Zoila Gort paid the utility bills, insurance bills and tax bills.

4. In 1981, Zoila Gort retired and moved to Florida. She spent part of her time living with Miguel Gort and his family in the defendant property, and part of her time living with her other son, Cesar Gort.

5. In 1987, Zoila Gort rented a studio apartment on Bayshore Drive in Miami, Florida. At that point, she split her time between the apartment, Cesar Gort's house, and Miguel Gort's house, but she spent at least three or four nights a week at the defendant property. She kept clothes and personal property in both the apartment and at the defendant property. In addition, she had some bills and letters sent to the defendant property, and other bills and letters sent to the Bayshore Drive apartment.

6. On or about May 1, 1991, Miguel Gort was indicted in the Southern District of Florida on one count of Importation of Cocaine, a violation of 21 U.S.C. § 952(a) and 960(a)(1) and (b), and 18 U.S.C. § 2, one count of Conspiracy to Import Cocaine, a violation of 21 U.S.C. § 952(a) and § 963, one count of Possession with Intent to Distribute Cocaine, a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and one count of Conspiracy to Possess with Intent to Distribute Cocaine, a violation of 21 U.S.C. § 841(a)(1) and § 846.

7. Miguel Gort was found guilty of all four counts on or about February 13, 1992, after a jury trial in Key West, Florida. He was sentenced to life in prison and a $250,000 fine on September 17, 1992.

8. Special Agent Willie Womack of the United States Customs Service testified credibly at trial about the events leading up to the seizure of the defendant property. He testified that Mario Ramos, a cooperating government witness, informed the government that he was hired by Miguel Gort to assist in the cocaine smuggling operation. Ramos described Miguel Gort in detail, and he asserted that he had met Miguel Gort at the house at 12110 S.W. 92nd Street on numerous occasions over the prior two years to plan smuggling operations. Specifically, Ramos alleged that Gort had used the telephone at the defendant property to transmit instructions to Ramos, had received payments from Miguel Gort at the defendant property, and had received one-quarter gram of cocaine from Miguel Gort at the defendant property. In addition, Ramos described the location of several secret compartments inside the defendant property and in the backyard.

9. On April 26, 1992, Special Agent Womack applied for and received a revised Search Warrant for 12110 S.W. 92nd Street, Miami, Florida, from the Honorable Magistrate Judge Ted E. Bandstra. The search warrant was executed on the same day by Special Agent Womack and other federal agents.

10. The search revealed two floor safes inside the property and three buried PVC pipes in the backyard. The safes were empty, and a subsequent field test failed to reveal the existence of any drug residues. Two of the three buried pipes were also empty, but the third pipe contained $100,000.00 in United States currency. Although no drugs or weapons were found on the property, the property did contain several surveillance cameras and a corn cob pipe with a trace of marijuana residue.

11. Zoila Gort testified at the trial. Although her testimony concerning various financial arrangements and property holdings was inconsistent and only partially credible, her testimony concerning the alleged criminal activity on the defendant property was credible. Most importantly, Zoila Gort testified that she never saw drugs used or sold on the property, and would not have allowed drugs on the property. She also testified that she never saw Miguel Gort meet with any suspicious friends at the house, and she maintained that she never met or saw Mario Ramos at the defendant property. Finally,

she credibly testified that she did not know of the existence of the buried pipes in the backyard. This testimony is reasonable in light of the fact that Zoila Gort was in her late 70's at the time that the underlying transactions allegedly occurred on the property, and in light of the fact that she worked five days a week, from 6:00 a.m. to 5:00 p.m.

12. The Court finds reasonable Zoila Gort's testimony concerning the safes and the surveillance cameras on the defendant property. She testified that after a rash of burglaries in the neighborhood in the early or mid 1980's, the family decided to secure the house and their personal belongings.

13. Special Agent Womack credibly testified that Zoila Gort was never a suspect in the underlying criminal activities of Miguel Gort. He also testified that there was no evidence that Zoila Gort was ever in the defendant property when Mario Ramos visited the house or at the time of any drug-related communications. Zoila Gort was not present when Womack executed the search warrant. Finally, he testified that the safes and pipes were hidden from view and would not have been visible to any person who did not possess knowledge of the location of the secret compartments.

14. Miguel Gort was arrested for drug related offenses in 1983 and 1989. At the time of each arrest, Zoila Gort pledged her home as collateral for Miguel Gort's appearances in court. Although the disposition of the 1983 arrest is unclear, Miguel Gort was acquitted of all charges brought against him in 1989. Zoila Gort credibly testified that she inquired into these arrests, but Miguel Gort, a middle-aged man, either lied to her or minimized the nature and extent of the criminal charges. In either event, Zoila Gort had no knowledge that Miguel Gort was a drug dealer.

15. Zoila Gort admitted that she knew that Miguel Gort suffered from a substance abuse problem for many years, but she credibly maintained that she never imagined that he would ever become a drug dealer.

### CONCLUSIONS OF LAW

In light of the findings of fact recited above, the Court reaches the following conclusions of law:

1. In forfeiture actions, a claimant who asserts standing to contest the seizure and forfeiture of property used in violation of federal laws must establish that she has an ownership interest in the property subject to forfeiture. *United States v. $4,253,000.00 in U.S. Currency,* 762 F.2d 895, 907 (11th Cir. 1985), *cert. den.* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986). The claimant bears the burden of establishing standing. *United States v. $500,000.00,* 730 F.2d 1437, 1439 (11th Cir.1984). Moreover, possession of bare legal title by one who does not exercise dominion and control over the property is insufficient to establish standing to challenge a forfeiture. *United States v. A Single Family Residence,* 803 F.2d 625, 630 (11th Cir. 1986).

2. The United States alleges that Zoila Gort does not have standing to challenge the forfeiture of the defendant property because she does not exercise dominion and control over the property. The Court concludes, however, that Zoila Gort has standing to challenge the forfeiture of the defendant property. It is apparent that Zoila Gort split her time between three different residences, but it is also clear that she spent three or four nights a week at the defendant property.

3. There is no evidence that Zoila Gort was a "straw owner" of the property. In addition, the government's argument that Zoila Gort did not use the defendant property as her "primary residence" is pointless. A property owner only needs to show that she maintained dominion and control over a property in order to have standing to challenge a forfeiture proceeding. Conceivably, a person may maintain dominion and control over any number of properties or residences, not just the person's primary residence.

4. The United States established probable cause for forfeiture, based on Miguel Gort's use of the property as a staging center for his smuggling operations in violation of Title II of the Controlled Substances Act, 21 U.S.C.A. § 801 (West 1992).

5. Zoila Gort is an "innocent owner" under the case law establishing the requirements for this defense. *United States v. One 1980 Bertram 58' Motor Yacht,* 876 F.2d 884, 888 (11th Cir.1989) ("To prevail on a defense of innocent ownership, a claimant must prove not only that it was uninvolved in and unaware of the activity upon which forfeiture is sought, but also that it did everything that reasonably could be expected of it to prevent the activity.").

6. Zoila Gort testified that she was not involved in the underlying criminal activity, and that she did not have any knowledge that her son was dealing drugs or using drugs on the defendant property. This testimony was entirely credible because the money found on the property was concealed in a pipe buried in the backyard. In addition, given her other family and employment burdens, it is highly likely that she would lack knowledge of the underlying criminal activities. Furthermore, in view of her expressed antipathy to drugs, it would be reasonable to assume that Miguel Gort would try to keep Zoila Gort in the dark about his proscribed activities. *See United States v. Leasehold Interest in 121 Nostrand Avenue,* 760 F.Supp. 1015 (E.D.N.Y.1991) (Court took judicial notice of the widespread lack of knowledge of childrens drug activities in American families.).

7. Since Zoila Gort lacked knowledge of the drug activity, she has successfully established the innocent owner defense and is entitled to retain the defendant real property. The United States contends that because Zoila Gort knew that Miguel Gort suffered from a drug problem and had been arrested by the police, she should have evicted him from her property. The Court finds, however, that it would not have been reasonable for an elderly woman to evict her son and his entire family from her home, especially in light of her apparent dedication to maintaining and preserving the family.

8. This innocent owner defense presented by Zoila Gort closely resembles the innocent owner defense presented by Claimant Elisa Colon in *United States v. One Parcel of Real Property,* 942 F.2d 74 (1st Cir.1991). In that case, the Court upheld the district court's determination that a successful innocent owner defense was presented by the claimant because: (1) the claimant was never a suspect in her husband's drug activities; (2) the defendant in the underlying criminal case admitted that the drugs and money found on the property belonged to him; (3) the claimant testified that she had no knowledge of her husband's drug activity and never would have permitted it in her home; (4) the claimant was not present in the house when the police executed a search warrant and seized contraband; and (5) the district court believed the claimant.

9. In the present case, Zoila Gort was never a suspect in her son's criminal activities, she testified that she had no knowledge of his drug dealing, and she was not present in the house at the time of the search and seizure. In addition, the Court finds her testimony regarding her lack of knowledge of her son's drug smuggling activities to be credible.

### CONCLUSION

The United States established probable cause to seize the defendant property, but claimant Zoila Gort has proven, by a preponderance of the evidence, that she is an innocent owner of the defendant property. Consequently, it is hereby

ORDERED AND ADJUDGED that judgment shall be entered in favor of the Claimant, Zoila Gort, and against the Plaintiff, United States of America, by separate order, pursuant to *Fed.R.Civ.P.* 58.

DONE AND ORDERED.